JOSEPH S. LEWIS et al., Respondents, *v.* BENJAMIN M. GREIDER et al., Appellants.

An appeal from a judgment of a General Term does not bring up for review an order denying a motion for reargument, made subsequent to the judgment.

An agreement, by which one employed to purchase grain is to receive for his services one-half the profits realized on the grain purchased, does not constitute him a partner so as to make him a necessary party plaintiff in an action brought by his employer upon a contract in reference to the grain so purchased.

Defendants contracted to purchase of plaintiffs a quantity of barley in store and to be delivered at Lodi, Seneca county. The former refusing to take and pay for the same, were notified by the latter that the grain would be sold on their account and they held responsible for the difference between the contract-price and the avails of the sale. Plaintiffs made the best efforts they could to sell at Lodi, but finding the market dull, shipped the grain to New York and there sold it in the usual way and for the best attainable price.

In an action to recover the loss,—*Held*, that the place of sale was not necessarily restricted to the place where by the contract the vendees were bound to receive the property ; that the vendors were authorized to exercise a reasonable discretion as to place of sale, and to exercise it in a reasonable time, and whether this discretion was exercised properly and in good faith, were questions of fact ; also, *held*, that the vendors had the right to insure the property and charge the premium to the vendees. It is not necessary in such case that the sale be made in the name of the vendee if in fact it is made for him.

(Submitted May 22, 1872; decided September term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the seventh judicial district, affirming a judgment in favor of plaintiffs, entered upon the report of a referee. (Reported below, 49 Barb., 606.)

This action was brought to recover damages alleged by the plaintiffs to have been sustained by them by reason of the defendants refusing to receive and pay for a quantity of barley, in accordance with a contract between the parties for the sale and purchase of the same. On the trial before the referee, it appeared that on the 9th of December, 1864, the

plaintiffs and defendants contracted with each other for the sale by the plaintiffs and the purchase by the defendants of 3,000 bushels of barley, then owned by the plaintiffs and in a storehouse at a steamboat landing in Lodi, Seneca county, and for the purchase and sale of a further quantity of merchantable barley, not to exceed 2,000 bushels, as soon as the plaintiffs could purchase and deliver the same upon a steamboat at that landing, all at two dollars per bushel. Upon entering into the contract, the defendants paid thereon $3,000, and afterward received something over 700 of the 3,000 bushels of the barley in store. The plaintiffs in fulfillment of the contract purchased 1,700 bushels and had it in store at the place appointed ready for delivery as early as the fifth day of the following January (1865), and during that month addressed to the defendants a letter at their place of business, advising them of that fact; the letter was never received by them. All the barley embraced in the contract was purchased by one John Coryell, an employe of the plaintiffs to purchase grain under an agreement by which the plaintiffs furnished the funds with which to make the purchases, and were to dispose of the grain so purchased; and Coryell, as a compensation for his services, was to receive one-half of the profits realized from its sale. On the sixth of March following (1865) one of the defendants examined all the barley in store and expressed himself satisfied with its quality; but afterward, on the fifteenth of the same month, disagreeing with the plaintiffs as to whether the defendants agreed to purchase any more than the 3,000 bushels in store at the time the contract was made, declined to do any further act in fulfillment of the contract, barley was then worth, about Seneca lake and Geneva, one dollar and ninety cents per bushel. On this occasion the plaintiffs notified the defendants that they would sell the barley on hand for and on account of the defendants to the best advantage, and hold them responsible for the difference between the proceeds of the sale and the price fixed by the contract. The plaintiffs made such efforts as they could to sell the barley, but

finding the market dull, concluded that by shipping it to New York a better price could be obtained, and as soon as possible after canal navigation was resumed shipped it to New York, where it arrived on the 16th May, and was then sold in the usual manner at broker's sale for the best price that could then be obtained; that the shipment and sale was made by the plaintiffs in good faith, and for the purpose of disposing of the grain to the best advantage; that it was shipped insured in the name of the plaintiffs, and, so far as the shippers, insurers or brokers knew, as the property of the plaintiffs; that the gross avails of the sale were $4,622.38, a much less sum than it would have amounted to at one dollar and ninety cents per bushel; that freight, storage and commissions, and other necessary expenses, including twenty-five dollars paid for insurance, amounted to $668.64, leaving the net avails of the sale $3,953.74. The evidence as to the expenses of the sale was taken subject to the defendants' general objection thereto. No specific objection, as to any single item thereof, seems to have been raised; and as the broker was about to state the manner of selling the barley, the defendants objected to the proof upon the ground that the plaintiffs had not complied with the rules of selling barley. The evidence was, by consent of the parties, received, subject to the objection thus made. As a conclusion of law from those facts, the referee found that Coryell was not, in virtue of the arrangement under which he purchased the grain, a copartner with the plaintiffs in their business of buying and selling grain, not a necessary or proper party plaintiff, to which the defendants excepted.

That the notice, as given to the defendants by the plaintiffs, of their intention as to the sale of the grain and the proceeds was sufficient in law to authorize the sale made by them, and the application of the proceeds upon the contract, to which the defendants excepted.

That the plaintiffs, after crediting the cash paid upon the agreement, and the net avails of the barley, were entitled to

judgment for the balance remaining unpaid on the same, to which the defendants also excepted.

Judgment was duly entered in accordance with the finding.

After judgment of affirmance was ordered by the General Term and entered, a motion was made for reargument before the same General Term, founded upon an affidavit of the defendants' attorney and the certificate of the referee that the referee, in his examination of the evidence in the case, overlooked the word "prime," interlined "in faint hand" in a memorandum made by one of the defendants, as he testified at the time the contract for the purchase of barley was made, as descriptive of its quality; and as to which the referee also certified that if he had observed the word thus interlined, it would not have changed the result. The motion was denied. The defendant then appealed from the judgment previously entered to the Court of Appeals, making no mention of the order denying the motion for a reargument.

*Angus McDonald* for the appellants. The referee erred in deciding Coryell was not a proper party plaintiff. (*Secor* v. *Keller*, 4 Duer, 416; *Fowler* v. *A. Ins. Co.*, 8 Bosw., 332.) The sale of the grain in New York was not good and binding, as against defendants, to fix the plaintiffs' recovery. (*Pollen* v. *Le Roy*, 30 N. Y., 549; *Dustan* v. *McAndrew*, 44 id., 76; 10 Bosw., 136; *McLean* v. *Dunn*, 4 Bing., 728; *Girard* v. *Tygart*, 5 Serg. & Rawle, 32; *Buffington* v. *Quantin*, 15 Penn. [5 Harris], 310; *Sands* v. *Taylor*, 5 J. R., 395; *Bement* v. *Smith*, 15 Wend., 493; *Crooks* v. *Moore*, 1 Sandf., 297.) The notice of sale must specify the time and place of sale. (*McEachron* v. *Randles*, 34 Barb., 301; *Mallory* v. *Lord*, 29 id., 454; *Messmore* v. *N. Y. Shot and Lead Co.*, 40 N. Y., 422.)

*H. R. Selden* for the respondents. Coryell was not a necessary or even a proper party to this action. (*Burcle* v. *Eckhart*, 1 Denio, 337; S. C., 3 Coms., 132; *Vanderburgh* v. *Hall*, 20 Wend., 71; *Lamb* v. *Grover*, 47 Barb., 317; Story on Partnership, § 49.) Upon defendants' refusal to accept

and pay for the grain, plaintiffs were justified in selling it after the notice they gave defendants, and the latter were chargeable with the deficiency. (*Sands* v. *Taylor*, 5 J. R., 395, 405, 406, 407, 410 ; *Bement* v. *Smith*, 15 Wend., 497 ; *Crooks* v. *Moore*, 1 Sandf., 297 ; *McEachron* v. *Randles*, 34 Barb., 305 ; *Pollen* v. *Le Roy*, 30 N. Y., 555 ; *Messmore* v. *N. Y. Shot and Lead Co.*, 40 id., 428, 429 ; *Dustan* v. *McAndrew*, 44 id., 72–78 ; *McLean* v. *Dunn*, 4 Bing., 722, 15 Eng. C. L. ; *Stewart* v. *Canty*, 8 M. & W., 160 ; Sedgw. on Dam., 3d ed., 281 ; Chitty on Con., 8 Am. ed., 376 ; Story on Sales, §§ 436, 436 *a ;* 1 Parsons on Con., 446 ; *Bogart* v. *O'Regan*, 1 E. D. Smith, 590.)   Defendants cannot urge that sending the barley to New York for sale was not a reasonable exercise of discretion. (*Grant* v. *Morse*, 22 N. Y., 324 ; *Milburn* v. *Belloni*, 39 id., 54 ; *Colwell* v. *Lawrence*, 38 id., 71 ; *Carman* v. *Pultz*, 21 id., 551, 552.)

GRAY, C.   Whether the barley embraced in the contract was to be of a denomination called merchantable, or of a higher quality called prime, is a question upon which the evidence was conflicting.   Had the word prime in the defendants' memorandum been omitted, the inference against the defendants, from the whole evidence, would have been increased, and interlined as it was, so faintly that it escaped observation by the referee, was (being unexplained) a matter of so great suspicion that, considered in connection with the other evidence in the case, we cannot say that the referee was not entirely right in thinking that it would not, had he discovered it, have changed the result.   Be that as it may, the question as to whether the defendants were prejudiced by it is not properly here.   The judgment appealed from was perfected before it was made to appear that the interlined word had been unobserved by the referee.   The judgment only is appealed from.   The motion for a reargument was made and denied subsequent to the judgment, and with that, so far as the record shows, the defendants are content. (See *Selden* v. *Del. & Hudson Canal Co.*, 29 N. Y., 634, 637.)   The

purchase of the barley by Coryell as the employe of the plaintiffs, and with their funds, to be remunerated for his services by receiving one-half of the profits that should be realized from it on a sale made by the plaintiffs, did not constitute him a partner so as to render him a necessary party plaintiff. (*Burckle* v. *Eckart*, 1 Denio, 337, 341, 342; affirmed 3 N. Y., 132, 137, 138.) The plaintiffs' equitable lien upon the barley, as a security for their damages occasioned by the defendants' refusal to receive and pay for it, as well as their right to sell it and apply the avails, so far as they would go, to satisfy their lien and maintain their action for the balance, is not at this day involved in doubt. (*Bement* v. *Smith*, 15 Wend., 193, 197). In making the sale the vendor is the agent of the vendee to sell the property, and should sell it fairly and to the best advantage. (*Pollen* v. *Leroy*, 30 N. Y., 549, 557; *Messmore* v. *The N. Y. Shot and Lead Co.*, 40 N. Y., 422, 428, 429.) Notice of the time and place of making the sale was unnecessary. (*Pollen* v. *Leroy*, *supra; Messmore* v. *The N. Y. Shot and Lead Co.*, *supra.*)

A question is raised whether, upon any exception taken at the trial, the defendants can now insist that the sale should have been made at Lodi, and not in the city of New York. Passing over that question, I will assume that the question of the plaintiffs' right to sell in the city of New York is legitimately before us. The barley was a security in their hands, affording sure means of enforcing payment for so much as it is worth, deducting expenses; for the excess over and above the amount for which it should be sold, they were warranted, from the conduct of the defendants, in refusing to receive and pay for it, believing that it would be the subject of litigation. The pleadings show that the defendants were non-residents of this State; to recover the excess, a litigation in a foreign State, attended with greater inconvenience and expense than a litigation at home, might have been a necessary result. If sued for and collectible here, its payment might, as it already has been, greatly delayed. The plaintiffs, therefore, as well as the defendants, had an interest in obtaining the best price at

which it could be sold.   New York is the great market for the surplus products of other portions of the State.   The referee has found that the plaintiffs made the best efforts they could to sell the barley, but finding the market dull, concluded in good faith to try the New York market; and that they did so in the following month, after the defendants refused to receive and pay for it, and as soon as that market was accessible by canal, and shipped for that city, and upon its arrival there sold it in the usual way and for the best attainable price.   The place of sale is not necessarily restricted to the place where, by the contract, the vendee was bound to receive the property.   The vendors having, as they should, the interest of both parties in view, had the undoubted right, as a means of guarding against loss, to procure an insurance upon it, and within the rule that would justify such reasonable outlay to save it from loss, they should be permitted to exercise a reasonable discretion as to the place of sale, and to exercise it within a reasonable time.

As a general and well understood proposition, the tendency of the surplus products of this State is to the New York market. The referee has in substance found as a fact in the case, that each of these rights was not only reasonably exercised, but was exercised in good faith.   This, within the principle settled in *Dustan* v. *McAndrew* (44 N. Y., 72, 79), is all that was required.   And although the sale was not conducted in the name of the defendants, it having, as the referee has in substance found, been conducted for them, and no possible prejudice to them on that account being suggested or discovered, none is found for holding it invalid.

The judgment appealed from should be affirmed.

All concur; HUNT, C., on the ground that there was no sufficient exception raising the question as to plaintiffs' right to sell in New York.

Judgment affirmed.