# CHARLESTON.

AMERICAN CANNING CO. v. FLAT TOP GROCERY CO.

Submitted March 15, 1910.    Decided February 21, 1911.

1. SALES—*Sale by Sample.*
    The fact that a sample is exhibited does not necessarily make the transaction a sale by sample. The contract must evince intention to contract by sample.

2. EVIDENCE—*Sales—Parol Evidence—Sale by Sample.*
    As a general rule, when the contract is in writing and there is nothing therein indicating that a sample was used or referred to, parol evidence is not admissible to show a sale by sample; and whether or not the writing, upon its face, is a complete expression of the agreement of the parties is one of law for the court.

3. TRIAL—*Instructions—Ignoring Evidence.*
    In a suit by vendor against purchaser, the contract, in writing, calling for "Standard No. 3 berries," an instruction to the jury ignoring the fact that at or before the time of the contract samples were exhibited by a broker, and telling them that if they found from the evidence that the goods called for by the contract and tendered by the vendor was a standard of berries well known to the commercial world, and descriptive thereof, was not erroneous, the finding of such fact being conclusive of the rights of the parties, parol evidence being inadmissible to vary or explain the terms of such contract or to show that samples had been exhibited by such broker.

4. SALES—*Refusal of Buyer to Accept Goods—Measure of Damages.*
    Where the seller elects to retain the goods tendered to and refused by the vendee, the general rule for the measure of damages for a breach of the contract by the vendee, is the difference between the contract price and the market price, at the time and place stipulated for the delivery thereof. But if the vendor elects, as he may, to treat the goods refused as the

property of the vendee, and after notice to sell them for his account, the measure of his damages is the difference between the selling price and the price realized on the resale thereof, fairly made, in good faith, by the vendor.

5. SAME.
   The vendor in making such resale is not limited to the time and place stipulated in the contract for delivery of the goods. He may, after notice to the vendee of his intention to resell the goods for his account, exercise his discretion as to the time and place of such resale.

6. TRIAL—*Refusal of Requests—Binding Instructions.*
   Binding instructions to the jury based on controverted fact, and which are not conclusive, and which ignore other facts and theories in the case, are erroneous, and are properly rejected.

7. APPEAL AND ERROR—*Review—Discretion of Court—Reception of Evidence.*
   Unless there has been plain abuse of its discretion, prejudicial to the complaining party, the judgment of the trial court will not be reversed for irregularities in the manner in which it has permitted the parties to introduce their evidence in chief and in rebuttal.

(BRANNON, JUDGE, absent.)

Error to Circuit Court, Mercer County.

Action by the American Canning Company against the Flat Top Grocery Company. Judgment for plaintiff, and defendant brings error.

                                            *Affirmed.*

*Ritz & Ritz,* for plaintiff in error.

*Sanders & Crockett,* for defendant in error.

MILLER, JUDGE:

Plaintiff sued defendant in *assumpsit* for damages for refusing to accept and pay for at the time and place stipulated in the contract, three thousand cases, six thousand dozen, "Standard No. 3 Berries," fully executed on its part, as follows: "Contract for sale of 3000 cases Blackberries: We this day sell to Flat Top Grocery Co. of Bluefield, W. Va. (3000) cases, 6000 Doz. Standard No. 3 berries for delivery at end of packing season, 1908. We guarantee the same to be standard in every respect, and fully guaranteed against swells for a period of 6 months, from date of shipment. We further agree to allow the

said Flat Top Grocery Co. a credit of $1.00 per M. for labels if they supply the same, it being agreed that the same shall be in our hands not later than July 15th, 1908. The consideration for the above shall be $1.00 per Doz. F. O. B. Warehouse at loading point, with a guaranteed rate not in excess of 44 cts. per 100 lbs. We further agree to ship the same as advised by the said Flat Top Gro. Co. they agreeing to supply us with shipping instructions on or before August 1st, 1908. The terms of this sale shall be net less 1 1/2% cash discount. This contract shall be in full force and effect, except, that in the event we should by fire lose our packing then the same shall become null and void. The above entered this the 2nd day of June, 1908. Signed, Flat Top Grocery Co., Buyers, by O. L. Alexander, Manager. Signed, American Canning Company, by A. F. Messick, Sellers. !We will guarantee delivery of this contract. Signed A. F. Messick, W. J. Brothers."

On the trial plaintiff recovered a verdict and judgment for two thousand two hundred and seventy-nine dollars and seventy cents, the difference between the contract price and the amount realized on a resale of the goods for account of defendant, with interest and costs. To reverse this judgment defendant has brought the case here on a writ of error.

It will be wholly unnecessary for us to respond to each or all of the many assignments of error, except as they are necessarily involved in the decisive points fairly presented. by the record.

The defense was that the goods packed and tendered by plaintiff in execution of its contract were not of the character and quality called for, and that it was not bound by the terms of the contract to accept and pay for them.

On the part of the plaintiff the case was tried on the theory that the contract was plain, without latent ambiguity, and that parol evidence was inadmissible to explain or vary the terms thereof. The defendants' theory was that it had bought the goods through the agency of Lacy Brothers, brokers, by sample, and that the goods purchased were guaranteed by the brokers to be equal in every way to the samples exhibited, and that there was no such thing known in the trade as "Standard No. 3 berries", and that parol evidence was admissible to explain its terms and to fit the contract to the subject matter thereof.

Over the objection of the plaintiff the court below permitted defendant to introduce the evidence of its manager, Alexander, and of the broker Lacy, and perhaps others, that "Standard No. 3 berries", meant one thing in North Carolina, another in Maryland, still another in Ohio, and had still a different meaning in other states, depending on the locality and the packer, and that the description of the goods in the contract was without definite meaning to the trade. On rebuttal, however, much evidence was admitted showing and tending to show "Standard No. 3 berries" was a trade designation well known in commerce, and to the defendant, and that it plainly indicated to defendant, at the time of the contract, the exact kind and quality of goods contracted for. Among those who testified on this subject was Charles B. Reed, a witness for defendant, who at that time and up to October 25th of that year had been the buyer for defendant company, and who after this controversy arose had been sent by it, with Lacy the broker, to North Carolina to inspect the berries there and to compare them with the sample cans taken along by Lacy. On cross examination Reed admitted that "Standard No. 3 blackberries" had a well defined trade meaning, and meant a can filled with liquid and solid matter to within a half to an inch of the top of the can, and which after being opened and the liquid drained off there would remain from two-fifths to one half of solid matter. He also stated that when in North Carolina he had examined the berries tendered by the plaintiff in execution of its contract, and had compared them with the sample cans taken along by Lacy, and had found them slightly heavier than the samples, the quality perfect, and that in his opinion they were "Standard No. 3 berries."

If we were the judges of the weight and credibility thereof we would have to say, after carefully reading and considering all the evidence on this question, that it largely preponderates in favor of the plaintiff. The contract was executed on behalf of the defendant by Alexander, its manager, a man of large experience, but not until he had gone to North Carolina, and personally conferred with the president of the plaintiff company, and given some directions about the packing, and according to plaintiffs' claim without any knowledge on its part at the time of the-contract, that it was the result of any negotiations begun

by Lacy Brothers. Why then, may be asked, did Alexander with his experience execute a contract calling 'for the delivery of "Standard No. 3 berries", if this description of the goods contracted for meant nothing to him or his company? Why did he not stipulate in the contract that the goods were to be equal to the samples exhibited by Lacy? His pretentions are wholly irreconcilable with the fact of his experience, and with the great weight of the evidence on this question.

After plaintiff had completed packing the goods and had tendered them to defendant at the time and place stipulated in the contract, defendant refused them; and afterwards, and after sending Reed and Lacy to North Carolina, to inspect the goods and compare them with the samples taken along by Lacy, and receiving the report from Reed that the goods tendered were "Standard No. 3 berries", it still declined to accept them; and still later after the goods had been shipped to Bluefield, West Virginia, and had there, at the home and very door of the defendant company, again been tendered, it still held out and refused to accept and pay for the goods.

The first error assigned and relied on is the giving of court's instruction to the jury number one, in lieu of plaintiffs' instructions numbers one, two, three and four, rejected. By this instruction the court told the jury that if they believed from the evidence that defendant had purchased from plaintiff three thousand cases of "Standard No. 3. berries", and that at that time such a standard of berries was known to the commercial world, and that pursuant to contract plaintiff had shipped to defendant at Bluefield, West Virginia, the goods called for by the contract, and which were refused by it, plaintiff had the right to resell said goods at the market price at Bluefield; and that if they further found from the evidence that defendant had not good and sufficient cause for refusing said goods they should find for plaintiff and assess its damages at the difference between the price stipulated in the contract and the market price received by the plaintiff from the sale of said goods to third parties, if they should find such resale thereof had been made. In connection with its criticism of this instruction we will consider defendants' instruction number six given. This instruction, we think, covered completely its theory of the case, as the former

instruction covered fully plaintiffs' theory. It told the jury, in substance, that if they believed from the evidence that Lacy Brothers, brokers, were authorized by plaintiff to make sale of the black berries referred to in the contract, and that Lacy Brothers took the order therefor, at the same time exhibiting to defendants' representative sample cases of blackberries, and which they represented were of the standard pick of the plaintiff company, and that the berries purchased would be in all respects in accordance with said standard, and they further found that defendant entered into the contract introduced in evidence, and that the word "Standard" used in said contract does not designate any generally recognized quality or quantity of black berries among the trade, then they were instructed that the sample cases so exhibited establishes the standard for the berries referred to in the contract, and that if they should find that the blackberries tendered by plaintiff in fulfillment of the contract were inferior to those contained in said sample cans, defendant had a right to reject the same, and if it did so their finding should be for defendant.

Defendants offer two criticisms of court's instruction number one: First, that it ignores the fact that sample berries were exhibited, and the theory of defendant that express warranties were made by Lacy Brothers; second, that it adopted an improper rule for measuring the damages. We reply to the first proposition, first, that it is doubtful whether Lacy Brothers had authority to expressly warrant the goods, as this criticism assumes. This authority is referred to the fact that sample cans were sent them by plaintiff, and to the clause in a letter of plaintiff, of May 23, 1908, which makes no reference to samples, saying among other things: "You can sell for us 3000 cases at 1.00 and give a guarantee of delivery, also a full guarantee of quality." We do not think the broad powers assumed can be inferred from these facts. Second, that the contract was not made directly through Lacy Brothers, but apparently without any reference to samples, or to any representations of Lacy Brothers, directly between the parties to the contract, and it contains no such express warranty. The words of the contract are "we guarantee the same to be *standard* in every respect", not according to samples. The mere fact that a sample is ex-

hibited does not necessarily make the transaction a sale by sample. The contract must evince an intention to contract by sample. Williston on Sales, section 252; Benjamin on Sales, (7th Ed.) section 649. In California it was held that when the contract is in writing, and nothing therein indicates that a sample was used or referred to, parol evidence is not admissible to show a sale by sample, and that whether or not the writing, upon its face, is a complete expression of the agreement of the parties is one of law. *Harrison* v. *McCormick,* 89 Cal. 327, 23 Am. St. Rep. 469 and notes. This is but a statement of the general law of contracts. And as Mr. Greenleaf says, 1 Greenleaf on Ev. section 275: "By written evidence, in this place, is meant not everything which is in writing, but that only which is of a documentary and more solemn nature, containing the terms of a contract between the parties, and designed to be the repository and evidence of their final intentions. * * When parties have deliberately put their engagements into writing, in such terms as import a legal obligation, without any uncertainty as to the object or extent of such engagement, it is conclusively presumed that the whole engagement of the parties, and the extent and manner of their undertaking, was reduced to writing; and all oral testimony of a previous colloquium between the parties, or of conversation or declarations at the time when it was completed, or afterwards, as it would tend in many instances to substitute a new and different contract for the one which was really agreed upon, to the prejudice, possibly, of one of the parties, is rejected. In other words, as the rule is now more briefly expressed, 'parol contemporaneous evidence is inadmissible to contradict or vary the terms of a valid written instrument'." This familiar rule is covered also by our own case of *McCoy* v. *Ash,* 64 W. Va. 655. While it is true this instruction takes no account of the exhibition of the sample berries, it is intended to present plaintiffs' theory of the case, that the "Standard No. 3 berries" called for by the contract was a well known grade and quality, recognized in the commercial world, and if so, and the jury so found, plaintiff had the right, under the authority cited, to ignore the theory of the defendant that samples were exhibited, for by tendering in execution of the contract, the goods which it had contracted to deliver, it was

entitled to a recovery.   The general rule that parol evidence is
admissible to explain, not a patent, but a latent ambiguity in
a contract, and as applied to this criticism, cannot be controvert-
ed.   Many authorities are cited by counsel for the proposition,
but they are misapplied, we think, to the instruction under
consideration; indeed, we think they support the converse pro-
position.

But how about the rule for the measure of damages, the
subject of the second criticism?   The general rule undoubtedly
is, that where the seller elects to retain the goods as his own, the
true measure of damages is the difference between the contract
price and the market price at the time and place stipulated for
the delivery.   Sutherland on Damages, section 647; Mechem on
Sales, section 1690.   But this is not the only course open to
the seller.   He may store or retain the property for the vendee,
and sue for the entire price, or he may do as the plaintiff did
in this case, sell the property and recover the difference be-
tween the contract price and the price obtained on the resale.
*James & Mitchell* v. *Adams,* 8 W. Va. 568, 575, citing 3 Par-
sons on Contracts, 208, and *Hall* v. *Pierce,* 4 W. Va. 107.
Leading cases to the same effect are *Rosenbaums* v. *Weeden,
Johnson & Co.,* 18 Grat. 785, 98 Am. Dec. 737; *Moore* v. *Potter,*
155 N. Y. 481, 63 Am. St. Rep. 692; *American Hide & Leather
Co.* v. *Chalkley & Co.,* 101 Va. 458; 24 Am. & Eng. Ency. Law,
1139.   Our own and the Virginia case cited fully cover the
subject.

Nor is the instruction objectionable on the ground assumed
therein, that the goods were shipped to Bluefield, and there sold
at the best market price obtainable.   High authority says:
"The vendor may, if necessary, transport the goods to another
place at the expense of the vendee, for a market.   The place of
resale is not necessarily restricted to that where by the contract
the vendees were bound to receive the property.   The vendor is
authorized to exercise a reasonable discretion as to the place of
sale, and may also, at the expense of the vendee, insure the
property." 3 Suth. on Damages, 1863.   *Rosenbaums* v. *Weeden,
Johnson & Co., supra; Waples & Co.* v. *Overaker & Co.,* 19 Am.
St. Rep. 727; *Lewis* v. *Greider,* 51 N. Y. 231; 24 Am. & Eng.
Ency. Law. 1142.   Defendant was notified of the intention of

the plaintiff to sell the goods for its account; this was all that was required to authorize the sale. *Rosenbaums* v. *Weeden. Johnson & Co., supra.* In this case, as has already been suggested, plaintiff carried the goods to the very door of the defendant. Complaint is made of this. It is argued that, if sold at all, the goods should have been sold at the market price prevailing at the point of delivery in North Carolina. But it does not appear that plaintiff had a market for the goods at that point. Reference is made in argument to a letter of the Canning Company to the Grocery Company, of August 25, 1908, saying that the best offer that had been made for the goods up to that time was eighty cents per dozen. It does not appear from what source this offer came, whether from a nearby or a distant market. Certainly it does not appear that the offer was for delivery at the place stipulated in the contract. At the time of writing this letter and for some time afterwards plaintiff, by correspondence and otherwise, was endeavoring to induce defendant to accept and pay for the goods. The evidence also shows, or tends to show, that the plaintiff had no market for these goods in North Carolina. They were shipped to Bluefield with the hope of inducing defendant to accept them there; or failing in that to sell them in that market, where it was believed the coal fields there or in that vicinity would furnish a market for the goods. Bad faith on the part of the plaintiff is not suggested, and certainly no warrant is found in the evidence for doing so. As already noted defendants' instruction number six, given, covered fully its theory of the case, and rightly submitted to the jury the question whether "Standard No. 3 berries" called for by the contract, had definite import, and if not, that the samples exhibited should be regarded as the standard of grade and quality called for.

Defendant also complains of the rejection of numerous instructions proposed by it. Instructions number two, three, four, eight and nine, refused, were binding instructions, and if given, would have made the case turn in favor of the defendant on the mere fact that samples had been exhibited by Lacy Brothers, and that regardless of the terms of the contract executed by the parties, they had undertaken to specially warrant that the goods sold should be equal in grade and quality to the samples. To

have so instructed the jury would have been clearly erroneous. Binding instructions of this character, ignoring the theory of the other side, were rightfully rejected. Besides the weight of the evidence in our opinion in that the goods sold were in fact as good or better than the samples exhibited by the brokers. These instructions were also objectionable for another reason; they ignored the fact that the parties had entered into a written contract, with definite terms, with which Lacy Brothers, if at all, were only indirectly and remotely connected.

Instructions number ten, eleven and twelve, we think, were also rightfully refused. They also practically ignored the fact of the written contract, and erroneously assumed that because Lacy Brothers, brokers, exhibited samples, that the contract subsequently reduced to writing and signed by the parties was a sale by sample, and that the alleged guaranty of the brokers, notwithstanding the written contract, was binding on the plaintiff. True they each told the jury that if they found the facts to be as assumed they should find the verdict in favor of the defendant, *unless they believed from the evidence that the word "Standard" used in the contract has a well defined meaning in the commercial world, as designating a particular kind or quality of blackberries.* These saving clauses however did not save the instructions from the serious objections noted. It did not follow from the facts assumed that the verdict should have been for defendant. .

The only other error relied upon, which we think should receive consideration is, that the court abused its discretion in permitting plaintiff to introduce its evidence, in chief and in rebuttal, in the manner shown by the record. It is complained that defendant was thereby greatly prejudiced, for which this Court should reverse the judgment below. On the trial plaintiff proved by Messick, its president, and others, the time, place and circumstances of the execution of the contract, the contract itself, the tender of the goods at the time and place stipulated in the contract, the subsequent shipment of the goods to Bluefield, and on their arrival the tender of them to defendant there, and its refusal to accept the goods either at the point of delivery provided in the contract, or at Bluefield, the sale of the goods, the amount realized, and that the goods

tendered were the goods called for by the contract, and then rested. The particular complaint is that plaintiff on cross-examination of defendants' witnesses was permitted, over its objection, to make its witnesses, witnesses for plaintiff as to matters which should have been proven by plaintiff in chief; and as to matters which it is claimed were collateral to the issues presented, and the defendant thereby given the advantage and opportunity of cross-examination. Reference is made particularly to the cross-examination of the defendants' witnesses Reed, Alexander, Udy and Lacy, by whom plaintiff was then permitted to prove that inspection of the goods had been made by Reed and Lacy in North Carolina, and that they had been compared with the samples taken there by Lacy, and that the goods tendered had been found by Reed to be as good or better than the samples with which they had been compared, and that subsequently upon the arrival of the goods at Bluefield, they had been then again inspected and compared with said samples. Undoubtedly the general rule is that the party who has the opening ought to introduce all his evidence necessary to make out his side of the issue. But all that was required of the plaintiff in this case was that it should prove the contract, and that it had manufactured or packed and tendered at the time and place called for the goods called for by the contract. Messick, the president of the company, who had personal knowledge of the packing of the goods, and of the character of the goods packed, and that they were the goods called for by the contract, testified to these facts. Plaintiff might have gone farther in chief and proven, as it subsequently did in rebuttal by Martin, and others, that the goods packed and shipped for account of defendant were standard goods of the kind called for by the contract, and perhaps it would have been more regular to do so, but as to the inspection subsequently made in North Carolina and at Bluefield, and the comparisons there made with the samples, we think these were matters proper for cross-examination and rebuttal, to meet the objections of the defendant to receiving the goods given in evidence by its witnesses, the defense being that the goods tendered were not those called for by the contract. We cannot say, therefore, that there was abuse of the discretion of the court in respect to the manner

of receiving this evidence. It is admitted that a trial court has wide discretion in such matters, and that it is only where there has been clear abuse of its discretion, and the party complaining seriously prejudiced thereby, that such irregularities call for reversal by an appellate court. We have given careful attention to this subject, and to the authorities cited, and in our judgment the error, if any, is not such as to justify us in disturbing the verdict, or the judgment of the court thereon.

Our opinion is to affirm the judgment below, and we will so order.

*Affirmed.*