## UNIVERSAL C. I. T. CORPORATION *v.* RHODES.

No. 41252          October 26, 1959          115 So. 2d 160

*William V. Murry*, Hattiesburg, for appellant.

*Morse & Morse*, Poplarville; *Grayson B. Keaton*, Picayune, for appellee.

KYLE, J.

The appellant, Universal C. I. T. Credit Corporation, plaintiff in the court below, filed an affidavit in replevin in the Circuit Court of Pearl River County to obtain possession of one 1956 Model V-8 Fairlane 4-door Ford automobile, Serial No. M6MT 140767, of the value of $210 alleged by the plaintiff to have been wrongfully detained by Charlie Rhodes, Jr. The affidavit was filed on April 30, 1958, and the plaintiff alleged in its affidavit that it was legally entitled to immediate possession of the automobile. A writ of replevin was issued immediately, and the writ was served on May 5, 1958. The sheriff in his return valued the vehicle at $210. The plaintiff executed and filed a replevin bond in the sum of $400, and the vehicle was delivered to the plaintiff.

The plaintiff filed later its declaration in replevin, and in its declaration alleged that the defendant, Charlie Rhodes, Jr., purchased the automobile described in the affidavit from Pittman Ford Company of Poplarville; that the seller retained title thereto to secure the unpaid balance of the purchase price, as evidenced by a conditional sale contract executed by Pittman Ford Company, seller, and the defendant on August 25, 1956; that the

contract provided for the payment of the balance of the purchase price in monthly installments, and in the event of default in the payment of any such installment the seller might take immediate possession of the vehicle and deal with it as provided in said contract; that, the contract was purchased by the plaintiff for a valuable consideration, and was transferred to the plaintiff by the seller, and the plaintiff became subrogated to all of the rights, title and interest of Pittman Ford Company therein. The plaintiff further alleged that the defendant had defaulted in the payment of the monthly installments of the purchase price of said automobile, and the plaintiff was entitled to the immediate possession of the vehicle. A copy of the Conditional Sale Contract was attached to the declaration. The contract showed that the unpaid balance of the purchase price on August 25, 1956, was $2,515.78, which was to be paid in 23 successive monthly installments, each in the amount of $77.60, and one final installment of $730.98, the first installment becoming due October 8, 1956.

The defendant in his answer denied the material allegations contained in the declaration; and the defendant specifically denied that he was in default on the contract.

The case was tried before a jury at the November 1958 term of the court. The jury returned a verdict in favor of the defendant and awarded damages to the defendant in the sum of $1575 for the wrongful suing out of the writ. Judgment was entered against the plaintiff for that amount, and from that judgment the plaintiff has prosecuted this appeal.

Several witnesses testified for the respective parties during the trial. But there is practically no dispute as to the material facts relating to the purchase of the automobile and the defendant's default in the payment of the monthly installments of the purchase price.

Charlie Rhodes, Jr., being called to testify as an adverse witness by the plaintiff, testified that he purchased the Ford automobile from Pittman Ford Company on August 25, 1956, and signed the Conditional Sale Contract, a copy of which was attached to the declaration in replevin. He stated that he paid the monthly installments of the unpaid balance of the purchase price as they came due until October 1957, when the automobile "caught fire" and burned up. He was 20 days behind in his payment for October, when the fire occurred, and he issued a check to the finance company on November 8, 1957, for the sum of $77.60, in payment of that installment, but later stopped payment on the check. He made no payments on the indebtedness thereafter. He stated that he had automobile insurance on the car, and several people told him that he should not keep on paying on the car after the fire until he got a settlement from the insurance company.

John H. Spillmon, an employee of the Universal C. I. T. Credit Corporation, testified that his company purchased the Conditional Sale Contract involved in this case, from Pittman Ford Company in the usual course of business, and that his company was the holder and owner of the contract at the time the affidavit in replevin was filed; that eleven installment payments under the contract had been made before the fire occurred; that the defendant issued a check for the October 1957 payment after the fire occurred, but later stopped payment on the check; that no payments had been made since that time, and his company had entered into no agreement with the defendant for a deferment of the payments which became due after the fire. Spillmon also stated that, after the plaintiff had obtained possession of the automobile in the replevin suit, the automobile was taken to the plaintiff's place of business at Bogalusa, Louisiana, and was sold for the sum of $175; that the Service Fire Insurance Company, which had issued

an insurance policy on the car, then paid to Universal C. I. T. the sum of $1364.30 in settlement of the insurance company's liability on the policy; that the gross balance owed by the defendant on the Conditional Sale Contract as of March 11, 1958, was $1662.18; and that after the amount received from the sale of the damaged vehicle and the amount received from the insurance company had been applied on the indebtedness, there still remained unpaid a balance of $99.18.

B. W. Pittman, one of the owners of the Pittman Ford Company, testified that he was familiar with the automobile which the defendant had purchased from the Pittman Ford Company, and according to his judgment, the automobile was worth $1595 immediately before the fire. Pittman stated that his wrecker towed the damaged vehicle back to the Pittman Ford Company's parking lot after the fire and stored it, and the car remained there a long time before it was moved. In his opinion the salvage value of the damaged vehicle was $210.

Charlie Rhodes, Jr., testifying in his own behalf, stated that the fire insurance company's agent came to see him sometime after the fire and offered to pay him $1395 in settlement of the insurance company's liability. He did not accept that offer, because he owed more than $1500 on the car, and if he had accepted that offer he still would have owed about $200. Rhodes stated that the insurance company's agent came back after he had turned the case over to his lawyer and offered him $1550, and he told the company's agent to talk to his lawyer about it. Rhodes stated that the automobile had been driven about 32,000 miles at the time it was burned. He had some new tires on the car, and he thought the car was worth $2500 at that time; but he did not know what the car would have brought on the market. In his opinion the car was worth $600 after the fire. He again stated that he stopped payment on the check which he had issued to Universal C. I. T. after the fire. He said, ''I

called and had the check stopped after they didn't make a settlement with me and didn't come to my agreement." He thought he could come to C. I. T. when he settled with the insurance people.

Four other witnesses were called to testify for the defendant concerning the condition and reasonable value of the automobile immediately prior to the fire. Walter Pardue testified that he was familiar with Charlie's automobile. It was in good condition immediately prior to the fire, and he thought it was worth $2300. The witness stated on cross-examination that he was not an automobile dealer, and had never worked for anybody selling automobiles and trucks. Aubrey Lowe testified that he had known Charlie all of his life, and was familiar with Charlie's automobile. It was in exceptional condition. He thought the car was worth about $2400. H. M. Stanford testified that he was engaged in selling Pontiacs and trucks for McCormick Wholesale at Forest, Mississippi; that he was familiar with Rhodes' automobile back in 1957, and that he thought it was worth about $2375. He stated that he did not say that he would give $2375 for the automobile, but he recommended to Mr. Lowe that it would be a good buy for him. H. C. Lowe testified that in his opinion the fair market value of Rhodes' car immediately before the fire was around $2500. The witness admitted that he was not a dealer and did not know the market value of the car at that time.

At the conclusion of the evidence the plaintiff requested an instruction for a directed verdict in its favor. The court refused to grant such instruction, and the case was submitted to the jury on the issue as to the plaintiff's right to the immediate possession of the automobile. The court granted the defendant two instructions in which the jury was told that if they believed that Universal C. I. T. Credit Corporation obtained the writ of replevin "with the wilful intent to wrong the defendant, Charlie

Rhodes, Jr.," they might include in their verdict a reasonable sum as punitive and exemplary damages; and that if the jury believed from the evidence that the suit "was filed wilfully, with malice or fraud against the aforesaid defendant," the jury might bring in a verdict against the plaintiff in such amount as would reasonably compensate the defendant for the damages sustained by him, if any, and that in arriving at the amount of such verdict they might take into consideration the expenses and loss of time incurred by the defendant to defend the suit in court, and a reasonable sum as compensation for the attorneys employed by the defendant to defend the suit, if in their discretion they believed that the defendant was entitled to punitive damages.

The jury returned a verdict for the defendant and "recommended the following compensation to him:"

$1,000.00  equity in the car.
$    80.00  interest for 12 months.
$   365.00  for inconvenience due to lack of transportation.
plus $  150.00  Lawyer fee.

The appellant assigns several errors as grounds for reversal of the judgment of the lower court, including errors in the giving of the above mentioned instructions relating to the award of punitive damages. It is not necessary that all of the alleged errors be considered by us on this appeal.

The first point argued by the appellant's attorney in his brief is that the court erred in refusing to grant the plaintiff's requested instruction for a directed verdict.

We think the court erred in refusing to grant the plaintiff's requested instruction for a directed verdict.

The Conditional Sale Contract, in which the defendant, Charlie Rhodes, Jr., is referred to as the "Customer," expressly provided that: "If Customer defaults on any obligation under this contract, * * * the full balance shall without notice become due forthwith,

\* \* \*. Customer agrees in any such case to pay said amount, or, at holder's election, to deliver the car to the holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which the holder may purchase) with or without having the car at the sale; the proceeds less all expenses shall be credited on the amount payable hereunder.''

The Conditional Sale Contract also provided that the car should be kept insured at customer's expense ''against such risks and in such amounts as holder may require, the proceeds thereof to be payable as interests shall appear.'' The contract also provided as follows: ''Customer hereby assigns to the holder any moneys not in excess of the unpaid balance hereunder which may become payable under such and other insurance, including return or unearned premiums, and directs any insurance company to make payment direct to the holder to be applied to said unpaid balance and appoints the holder as attorney in fact to indorse any draft.''

The appellee admitted that he had paid only eleven installments of the Conditional Sale Contract indebtedness at the time the fire occurred; that he had made no further payments since the fire; and that he still owed approximtaely $1500 as the unpaid balance of the indebtedness. The appellee admitted that he and the insurance company had been unable to agree on a settlement of the insurance company's liability under the insurance policy, and that he had continued for a period of approximately eight months to make default in the payment of the monthly installments due on the car, hoping finally to force the insurance company to meet his terms of settlement. The appellant had a right, at

any time after default was made in the payment of the monthly installment, to take possession of the automobile "without notice or demand for performance or legal process." Yet the appellant waited for a period of several months before taking action in the matter. The appellant was legally entitled to the possession of the car at the time of the filing of the affidavit in replevin; and the peremptory instruction requested by the appellant should have been given.

Appellee's attorneys argue that the appellant was guilty of malice and ill will, oppression and wilful wrongdoing when it repossessed the car and took it to Louisiana and sold it for $175, since the appellant could have sold the car for $210 in Mississippi without any hauling charges; that the appellant did not deal with the car as security for a debt, but wrongfully converted the same to its own use; and that the appellant had no right to collect the insurance without notice to the appellee. But we think there is no merit in any of these contentions. There is no evidence in the record from which the jury could rightfully infer fraud, malice, oppression or wrongdoing on the part of the appellant in repossessing the car after the appellee had defaulted in his payments, or in selling the car and crediting the proceeds on the amount payable under the contract, or in collecting the insurance and applying the same to the payment of the balance due on the contract. There is no proof in the record to show that the appellant failed to deal justly with the appellee's equitable rights or failed to use diligence to obtain the best price available for the damaged automobile. As stated by this Court in Dearborn Motors Credit Corporation v. Hinton, 221 Miss. 643, 74 So. 2d 739, 743, "It is a matter of common knowledge that property sold at a forced sale, whether public or private, does not ordinarily bring the full amount that the prospective purchaser may think it is actually worth." There is no evidence in the record to show

that a better offer than $175 could have been obtained for the damaged car if it had been offered for sale in Mississippi.

For the reasons stated above the judgment of the lower court is reversed and judgment will be entered here in favor of the appellant.

Reversed and judgment rendered for appellant.

*McGehee, C. J.,* and *Arrington, Ethridge* and *Gillespie, JJ.,* concur.