**Lee EKMAN, also known as Lee Dale Ekman, Appellant (Defendant below),**

v.

**MOUNTAIN MOTORS, INC., a Wyoming Corporation, Appellee (Plaintiff below).**

**No. 3005.**

Supreme Court of Wyoming.

Sept. 26, 1961.

Spence, Hill, Oeland & Tschirgi, Riverton, for appellant.

No appearance for appellee.

Before BLUME, C. J., and PARKER, HARNSBERGER and McINTYRE, JJ.

Mr. Chief Justice BLUME delivered the opinion of the court.

In this case the plaintiff, Mountain Motors, Inc., brought an action against Lee Ekman, defendant, alleging that on May 29, 1959, plaintiff sold and delivered to defendant a 1959 Simca (French made) automobile for $2,589.08 upon which there was an agreed balance due plaintiff from the defendant of $1,971.36, the transaction being pursuant to the terms of a conditional sale contract executed by plaintiff and defendant; that thereafter defendant failed to make payments in accordance with the terms of the conditional sale contract; that plaintiff elected to declare the unpaid balance immediately due and payable and demanded payment; that there was then justly due plaintiff the sum of $1,583.21; that thereafter plaintiff repossessed the automobile and, pursuant to the terms of the contract, sold it for $514.68, which sum together with a gratuitous credit of $200 was applied to the balance then due plaintiff; and that after such application there remained due plaintiff $868.53. Judgment was asked for that amount together with attorney's fees.

Defendant answered, alleging that the automobile in question was not sold by the plaintiff at either public or private sale; that the sale so made was not fairly conducted; that the reasonable market price of the automobile was not obtained by plaintiff nor credited to the defendant's account; and that had said automobile been sold fairly for the reasonable market value no sum would be due from the defendant to the plaintiff. Thereafter the defendant filed an amendment to his answer, alleging that the contract was tainted by usury. That contention, however, appears to have been abandoned on account of the adverse holding in Conway v. Skidmore, 48 Wyo. 73, 41 P.2d 1049. The case was tried to the court without a jury and on July 6, 1960, the court rendered judgment, giving the plaintiff judgment against the defendant for $868.53 but not allowing any attorney's fees. From that judgment the defendant has appealed to this court. A brief has been filed on his behalf in this court. There is no appearance herein on behalf of the plaintiff, Mountain Motors, Inc.

The essential facts herein are comparatively simple. The car had originally been purchased by one Charles Thayer. The defendant owned a Chevrolet car but he wanted to trade with Thayer on account of the expense required for gasoline in running the Chevrolet car. Accordingly, a new contract was made between Mountain Motors and the defendant. The contract was for a conditional sale. Title did not pass until full payment was made. The contract is in evidence herein and shows that $442.56 was allowed for the Chevrolet car; that a cash down payment of $175.16 was made; and that the balance due was $1,971.36. A monthly payment of $82.14 was required to be made under the contract. Provision was made for default on the part of the buyer. The provision in that connection is as follows:

"Time is of the essence. If Customer defaults on any obligation under this contract, or if holder shall consider the indebtedness or the car insecure, the full balance shall without notice become due forthwith, together with a reasonable sum (15% if permitted by law) as attorney's fees, if this contract is placed with an attorney. Customer agrees in any such case to pay said amount or, at holder's election, to deliver the car to holder, and holder may, without notice or demand for performance or legal process, enter any premises where the car may be found, take possession of it and custody of anything found in it, and retain all payments as compensation for use of the car while in Customer's possession. The car may be sold with or without notice, at private or public sale (at which holder may purchase) with or without having the car at the sale; the proceeds less all expenses of retaking, storing, repairing and selling shall be credited on the amount payable hereunder; Customer shall pay any remaining balance forthwith as liquidated damages for the breach of this contract, any surplus, however, to be paid to Customer."

The car was originally sold to Thayer for the sum of $2,175. Ekman retained the car for the period of about five months, during which time he paid in cash $388.15. Then on account of sickness in his family he was unable to make further monthly payments and told Mountain Motors that it would have to repossess the property. That was done. Hysler Runyan, manager of Mountain Motors, testified that he made a great effort to sell the automobile at private sale at Lander. He contacted some ten persons or more trying to sell them the car. He first offered it at $1,080 but could not find a purchaser. He subsequently reduced the price to $800 but again found no purchaser. Finally he offered it for $700 and had it nearly sold to a doctor but the latter ultimately refused to take the car. Thereupon the plaintiff took the car to Salt Lake City. It appears that there is a ready market at Salt Lake City for secondhand automobiles by reason of the fact that there are regular weekly auctions

held at that place at which a number of cars are offered and at which dealers from a number of states are present, including dealers from Wyoming. The car was sold at that auction in December 1959 for $514.68. Plaintiff gratuitously credited the defendant with $200 more, leaving due the balance mentioned in the complaint filed in this case. A book is issued on the west coast which goes under the name of "NADA" which gives the monthly prices of various kinds of automobiles. That book shows that the wholesale value of the car in question here in December 1959 was $1,400 and the retail value was $1,600. It appears herein, however, that that is merely a guide. It is shown herein that the car in question was damaged when redelivered to Mountain Motors. Runyan testified it would take approximately $200 to put the car in good condition. There is nothing in the record as to the mileage on the car. The witness James E. Guschewsky, an automobile dealer in Lander, testified that in his opinion the automobile in question here was worth approximately $500 in December 1959. He also testified as to the damage to the car. The witness Kenneth L. Martinson, also an automobile dealer in Lander, testified that the value of the automobile in question in December 1959 was approximately $750; that he had taken a 1958 Simca automobile to Salt Lake City; that he wanted $700 for the car but was unable to sell it; and that he took the car back to Lander and sold it finally for $600. The testimony of the witness Larry L. Petersen was somewhat different. He is a dealer in secondhand cars in Riverton, Wyoming. He testified that he had not been able to buy any foreign cars, apparently on account of the scarcity of them, and so had not sold any. It seems that he attempted to make some sort of deal with Ekman in relation to the automobile in question in September 1959 but failed. He testified that the cost of repair of the car would not have exceeded $55. He testified that he would have been willing to pay $1,100 to $1,200 for the car and in selling it could have made a

profit of $100 to $200. The court made some inquiry of this witness as follows:

"Q. Do you have any knowledge of any foreign cars being sold in this area? A. Oh, yes, quite a few. * *

"Q. Those are new cars? A. Yes.

"Q. Do you have any knowledge of any secondhand Simca cars being sold in this area at all? A. Just other than Mr. Ekman's. I have seen several others around.

"Q. You don't know what the sale price was? A. No, sir."

Counsel for appellant state in their brief:

"The question is as simple as the facts of the case. First, may the seller of an automobile on repossession establish the reasonable value of the automobile by the sale of the same at a wholesale market? Secondly, does the repossession sale of an automobile at a wholesale market in another state constitute 'a private or public sale'?"

Counsel for appellant do not appear to have investigated the law applicable in this case very carefully. They cite only the case of Conway v. Skidmore, supra, and think that that case is controlling herein. In that case this court held that the sale was duly advertised to be held at a certain place; that the sale was not held in the place as advertised; that accordingly the sale was irregular and should be set aside; and that the buyer should be credited with the minimum value of the goods involved as shown by the undisputed testimony. That case, accordingly, is not of any great help in solving the questions before us.

It is undoubtedly true that Ekman, the buyer in this case, found himself in a grim situation after the resale was made in the case at bar. He lost his Chevrolet car which had a value of more than $400. He paid over $500 in cash and he now has a judgment against him for $868.53, making a total of more than $1,700 which he lost for driving the car for only five months, the car in the meantime being damaged at most

in the sum of $200. The testimony indicates that foreign-made cars do not depreciate in value as quickly as American cars in view of the fact that the model of the cars is changed little, if any, from year to year. So we have taken more than ordinary pains in trying to determine whether or not the rules of law require that the harsh result herein should be mitigated.

 The contract herein involves a conditional sale, not a mortgage. Studebaker Bros. Co. of Utah v. Mau, 13 Wyo. 358, 80 P. 151, 110 Am.St.Rep. 1001, Id., 14 Wyo. 68, 82 P. 2. The seller, however, or his assignee had the right to treat the contract as a lien or mortgage. Conway v. Skidmore, supra. 3 Williston, Sales, § 579d (1948), holds that in equity and justice a conditional sale should be treated in the nature of a mortgage. If the seller in this case had treated the contract as being in the nature of a mortgage, the public sale in this case should have been made at Lander after public notice for four weeks. § 34-258, W.S.1957. But in this case the seller did not choose to treat the contract as a mortgage. It is said in 47 Am.Jur. Sales § 966, p. 179 (1943):

> " * * * in most jurisdictions, the vendor may by express provision in the contract preserve a right to resell the goods and hold the vendee liable for any deficiency between the amount realized on the resale and the unpaid balance due on the purchase price."

But the contract in the case at bar does not provide where the public sale may be held. So the question still remains as to whether or not the sale at Salt Lake City was fair, for the rule is well settled that the seller must act in good faith and deal fairly with the buyer. Thus it is stated in Hill v. Dominquez, 138 Cal.App.2dSupp. 891, 291 P.2d 203, 204, as follows:

> "A seller under a contract of conditional sale, who retakes the property sold and proposes to resell it and then sue the buyer for the balance due upon the contract price after crediting the amount obtained on such resale, must

deal fairly and justly with the original buyer in making the resale. * * *"

Defendant in his answer alleged that the automobile was not sold either at public or private sale, that the sale was not fairly conducted, and that the reasonable market price of the automobile was not obtained. Counsel now say that no authorities need be cited for any of these three points, but we cannot agree.

The conditional sale contract provided that if the seller took possession the automobile might be sold at either public or private sale, and there is no showing in the evidence that the occurrences in this case were contrary to such agreement. The record fails to bear out the charge that the sale was not fairly conducted, and we cannot assume that the mere fact of a car's being sold at a wholesale market in and of itself connotes any unfairness or indicates that the automobile brought less than a reasonable market value. These matters were alleged as affirmative defenses and as such should have been proved.

Perhaps something should be said concerning the holding of the sale in Salt Lake City rather than Lander. On this subject the statement in 78 C.J.S. Sales § 429 (1952) is of some interest:

> "While it is true that the resale should, under ordinary conditions, be made at the place of delivery of the goods, especially when the best market obtains there, there is no hard-and-fast rule with respect to the place of resale; so, if there is no market for the goods at the place of delivery, the seller, in pursuance of his duty to resell the goods in a mode best calculated to produce the real value of the goods, should and may sell the goods at the nearest and most available market wherein he can get the best obtainable price."

In the case of American Canning Co. v. Flat Top Grocery Co., 68 W.Va. 698, 70 S.E. 756, 759, the court, quoting from Sutherland on Damages, stated:

" * * * 'The vendor may, if necessary, transport the goods to another place at the expense of the vendee, for a market. The place of resale is not necessarily restricted to that where by the contract the vendees were bound to receive the property. The vendor is authorized to exercise a reasonable discretion as to the place of sale, and may also, at the expense of the vendee, insure the property.' 3 Suth. on Damages, 1863 * * *."

A number of cases are cited. In the case of Waples v. Overaker, 77 Tex. 7, 13 S.W. 527, 529, 19 Am.St.Rep. 727, the court stated:

"It is urged that appellees had no right to ship the wheat to New Orleans for sale, and make the price at which it then sold the basis of the recovery; that it should have been sold in Sherman, or in the nearest market. It is the duty of the seller in such a case to exercise good faith, and to realize the best price he can on resale; but if in the light of the facts before him, obtained in the exercise of due diligence, he pursues the course which prudence would dictate to a man of ordinary prudence, then the defaulting buyer ought not to be heard to say that the market in which the thing was sold was not in fact the most advantageous one. If appellants desired to select the market, they ought to have received the wheat, and sent it to that market. There are cases which seem to hold that the seller has not the right to ship to a distant market for sale, when the buyer refuses to receive the thing bought. Chapman v. Ingram, 30 Wis. 290; Rickey v. Tenbroeck, 63 Mo. [563], 568. If such a rule was recognized, in case property could not be sold at the place where the buyer ought to receive it the right of the seller to resell would be practically taken away. The true rule we believe to be that asserted in Lewis v. Greider, supra [51 N.Y. 231]: 'The place of sale is not necessarily restricted to the place where, by the contract, the vendee was bound to receive the property.' * * *"

See also 3 Williston, Sales, § 547, p. 170 (1948). In Universal C.I.T. Credit Corporation v. Rhodes, 237 Miss. 455, 115 So. 2d 160, an automobile was sold under a conditional sale contract in Mississippi. The seller repossessed the property. He took it to New Orleans and there sold it. It was contended that the automobile could have been sold for a better price in Mississippi. The court, brushing aside that contention, stated at 115 So.2d 164: "There is no evidence in the record to show that a better offer than $175 could have been obtained for the damaged car if it had been offered for sale in Mississippi." In the case at bar, there was testimony on the part of the witness Petersen that the car could have been sold at *private* sale for much more than the amount credited to Ekman, but the testimony is in conflict. There is no testimony as to what the car could have been sold for at *public sale* at Lander or whether auctions or public sales are being held in Lander, which is a comparatively small community. Runyan testified that two dealers in Simca cars in Denver went bankrupt, indicating, perhaps, that Simca cars are not particularly popular. Runyan had possession of the car after repossession for about two months or more, namely during October and November 1959, during which time he made earnest efforts to sell the car and failed to do so. There is no evidence that Ekman himself made any effort during that time to help Runyan. It has been held that a resale of repossessed goods may be made without notice to the vendee where the contract so provides and no statute requires that notice be given. 47 Am.Jur. Sales § 967(1943). To the same effect is 78 C.J.S. Sales § 601c (1952), which, however, in that connection states:

" * * * although even in the absence of contractual stipulations it has been held that on equitable principles the buyer should have reasonable notice

of the time and place of the resale, at least where the buyer has paid a substantial portion of the purchase price. * * * "

See also 3 Williston, Sales, § 548 (1948), speaking of the Uniform Sales Act. However, in this case we find no objection made to the fact that no notice was given when the car was taken to Salt Lake City. The appellee credited Ekman with $200 over and above the amount for which the car sold at Salt Lake City. Taking all of these facts into consideration, we do not think that we can say that the resale made in this case was void as a matter of law.

Assuming, however, that the resale herein should be considered irregular, that in itself does not solve the problem herein. Under the holding of the Conway case, supra, Ekman was entitled to be credited with the minimum value of the car. The testimony in that connection is conflicting. The minimum value according to one witness was $500. The maximum value would be about $1,100 or $1,200. The universal rule is that the trial court must resolve the conflicting evidence. So we cannot see how we can interfere, and the judgment herein must be and is affirmed.

Affirmed.