. JOHN CHASE, ET AL., Appellants, *vs.* JOHN BLAISDELL, Respondent.

APPEAL FROM THE DISTRICT COURT OF HENNEPIN COUNTY.

Where a party comes into possession of property under an agreement with the owner, and sells it in pursuance of the agreement for the sole use of the owner, he cannot be guilty of converting the property intrusted to him; but his responsibility results from his disposition of the proceeds of sale. If the proceeds be in money, which he refuses to pay over upon demand, or contrary to the agreement, he would be liable for money had and received; or if the proceeds consist of property other than money, he, upon like refusal, would be held to have converted it, the proceeds, to his own use, and would be liable in damages, the measure of which would be, not the value of the property named in the agreement, but that of the property received in exchange therefor.

But if the party wilfully or negligently sold the property below its value, or neglected to make deposits and exhibits of the conditions of the sales and proceeds, as required by the agreement, he would be liable for special damages, if a special claim therefor be made, and proved if denied; the measure of such damages would depend, not upon the value of the property at the time he received it, but upon the value of the property in his hands at the time of the neglect complained of, and how the interest of the claimant was affected by this neglect or omission.

Points and authorities of Appellants.

*First.*—That it appearing from the complaint that the Defendants were the mere *gratuitous agents* of the Plaintiff and others, to collect and dispose of certain pine logs scattered in Lake Pepin, pay all expenses, and divide the surplus, if any, among the owners, and that they took possession and disposed of said logs under their appointment as such agents; the Plaintiff, to show a cause of action against such agents, must aver either that the whole of the proceeds have been received, that the expenses have been all paid, and that a surplus remains, which the Defendants refuse to divide among the owners, or that said Defendants have been guilty of negligence or misconduct in the management of the business, stating what and wherein, and that the Plaintiff has suffered loss and injury thereby.    *Edwards on Bailts.*, 98–101; *Folsom vs. Mussey*, 1 *Farif*, 297; *Dunlap's Paley's Agency*, 39, 40, 74–76; *Story on Bailments*, 188, 179–183, &c.

*Second.*—That the mere averment, "that the Defendants have ever neglected and refused to give to Plaintiff a full and specific account of when and where they sold his said logs, and what kind of pay they received therefor, and how much money they have expended, and wherein, in and about the premises, though Plaintiff has often requested and demanded of them such account," does not state or show a cause of action.    *Parkhill et al., vs. Imlay*, 15 *Wend.*, 431, &c.; *Story on Agency*, secs. 85, 204.

*Third.*—That the mere averment that an agent, and especially a *gratuitous agent*, has, in a certain particular, violated his instructions, unaccompanied by any allegation of loss, injury, or damage, does not show a cause of action; nor is a mere loss enough, there must be wrong, as well as injury, to render him liable.    *Story on Agency*, secs. 204, 217, 219, 222, 236, 237; *Bell, et al., vs. Cunningham*, 8 *Curtis U. S.*, 289; *Coggs. vs. Bernard*, 1 *Smith's Lead. Ca.*, 283, &c., 294, 295, 305, 306, 333 *to* 341; 1 *Amer. Lead. Ca.*, 674, 675; *Dunlap's Paley's Agency*, 6, 74–77; *Foot vs. Storrs*, 2 *Barb. S. Ct.*, 328; *Story on Bailts.*, secs. 165, 169, 178–181, 820.

*Fourth.*—That all actions of a principal against his agent, growing out of alleged violations of duty, except, perhaps, the

single case of an action for money had and received, *sound in damages;* and the Plaintiff in this action having averred no loss, injury, or damage, arising out of any of the neglects complained of, his complaint does not state a cause of action. *Folsom vs. Mussey,* 1 *Fairfield,* 297; *Thorne vs. Dease,* 4 *John.,* 96; 1 *Chitty's Plead.,* 134, 135; *Story on Agency, secs.* 236, 237; *Brown vs. Treat,* 1 *Hill,* 225; 2 *Bouvier's Institutes, par.* 1349 *to* 1353; *Coggs. vs. Bernard,* 1 *Smith's Lead. Ca. cited above, Dunlap's Paley's Agency,* 78, 79.

*Fifth.*—That it was not the duty of the Defendants to furnish each of the parties in interest with a separate and minute account in detail of the several acts and doings of the agents, in the management and sale of these logs, the prices sold at and the kind of pay received therefor, and the expenses incurred, and when, where, and what for—the object of appointing a general place of report and deposit, being to avoid the necessity of reporting in detail. Nor was it their duty to furnish to each party in interest a separate and minute account in detail of the management, disposition and expenses of his mark of logs—because this was impracticable from the very nature of the business, and the manner in which they were required to manage it. *Story on Bail.,* 195.

*Sixth.*—A *gratuitous agent* is not chargeable with the value of chattels entrusted to him to manage and dispose of, because of mere acts of *non*feasance; to render him liable there must be not only *mis*feasance, but injury or loss to the principal resulting therefrom. *Edwards on Bailments,* 98 *to* 101; *Coggs vs. Bernard, cited above.*

*Seventh.*—The only acts of neglect averred in the complaint being the failure of the Defendants to make returns of sales to, and to deposit the effects of such sales with Marshall & Co., of St. Paul, as required by their instructions, or to make such returns to, or deposits with any other person; and the neglect and refusal to render a full and specific account of the acts and doings of said Defendants to Plaintiff, which are mere *non*feasances, without it being averred that any injury resulted therefrom; and it having been averred in the answer, and admitted by the reply, that, although no returns were made to or deposits with Marshall & Co., the Defendants did from

time to time, as sales were effected, make partial returns to, and did, as the same were received, make deposits of the proceeds of said sales with Dorillus Morrison, Esq., at his office in Minneapolis—that the returns so made presented a true and faithful exhibit of the acts and doings of said Defendants, their agents and employees, in and about the management of said business, of the sales made, the expenses incurred, &c.; and that said returns and exhibits were at all times open to the inspection and examination of said Plaintiff and other parties in interest, from, on or about the 1st day of of October, 1857; of which said several matters and things Plaintiff had notice from, on or about the date last aforesaid; and also that the surplus effects arising from said sales, after having deducted therefrom an amount sufficient to meet the remaining, unpaid expenses, were, from, on or about the 12th day of May, 1858, ready for distribution, and subject to the order of said Plaintiff and others, in proportion to the number of logs of each which had been collected and sold; of which said Plaintiff had notice on or about the day last aforesaid. All this showed a substantial compliance with the instructions contained in the instrument set out in the complaint; an acquiesence on the part of the Plaintiff, and under these circumstances it was error in the Court to deny Defendant's motion for judgment on the pleadings. *Parkhill vs. Imlay*, 15 *Wend.*, 431; 1 *Amer. L. C.*, 667; *Story on Ag.*, 236–77; 1 *John. Cases*, 111–113, *and Note*; 2 *Bouvier's Insts.*, 1349 *to* 1353; 1 *Amer. L. Ca.*, 657, 670, 671; *Corning vs. Southland*, 3 *Hill*, 556; *Delafield vs. State of Ill.*, 26 *Wend.*, 226.

*Eighth.*—That a Plaintiff is not entitled to recover in an action of this character, without having both averred and proved, not only acts of negligence or *misfeasance*, but that he suffered injury or damage by reason thereof, and had made a demand upon the Defendants for the proceeds of his logs; and the Plaintiff in this action having failed to do either, the Defendants were entitled to a judgment of dismissal; and it is the duty of the court to order such judgment, on motion of Defendant's counsel, in all cases where the plaintiff fails to make out a *prima facie* case. *Edwards on Bailments*, 115–117, 128–131; *Story on Agency*, secs. 222, 236, 237; 1 *Amer.*

*L. Ca.*, 672–675; *Stuart vs. Simpson*, 1 *Wend.*, 376; *Cooley vs. Betts*, 24 *Wend.*, 203; *Ferris vs. Parris*, 10 *John.*, 285, 172; *McMorris vs. Simpson*, 21 *Wend.*, 610; *Church et al. vs. Mumford*, 11 *John.*, 479; *Dunlap's Paley on Agency*, 78, 79; 1 *Graham on New Trials*, 278–288.

*Ninth.*—That where an agent is authorized by the instrument under which he acts, to appoint sub-agents, to perform the whole or any part of the duties of the agency, and instructed to take bonds for the faithful performance of their duties, and it appears from the evidence that the sub-agents have performed the duties designated in the instructions, the legal presumption is, that they were regularly and properly appointed; and it was error in the Court to charge the jury that such was not the presumption of law, and that it rested with the Defendants to show that such sub-agents were regularly appointed. *Story on Agency*, sec. 201.

*Tenth.*—That in an action by a principal against his agent, evidence of the value of the chattels entrusted to him to manage and dispose of is inadmissible, until the Plaintiff shall have introduced some proof of negligence or bad faith; or shall, at least, have offered to follow up such evidence of value with proof of negligence or bad faith on the part of the agent. *Cases above cited; Lawler vs. Keaquicks*, 1 *John. Ca.*, 175.

*Eleventh.*—The fact that the property of the agent is mixed up with that of the principal, and that he managed that of his principal as he did his own, is of itself evidence of ordinary care; and in order to render him liable to his principal, under such circumstances, the latter is bound to show gross negligence or bad faith, with consequential damage or injury. *Edwards on Bailments*, 102, *and cases there cited; Same*, 102–107; *Thorne vs. Dease*, 4 *John.*, 85, *&c., and cases cited; De Fonclear vs. Shottenkirk*, 3 *John.*, 170; *Story on Bailt.*, 184–188; *Dunlap's Paley's Agency*, 182, 183.

*Twelfth.*—To charge the jury "that the Plaintiff claims in his complaint that the Defendants had violated the contract set out therein, whereby Plaintiff has suffered loss," when there is no averment of loss or damage in the complaint, is a misdirection, sufficient in itself to reverse the order refusing a new trial.

*Thirteenth.*—To charge the jury " that if they find that the Defendants had sold logs at any time before the commencement of the action, and had failed to make returns, it was a violation of good faith," was a misdirection, and a ground of error sufficient to demand a new trial; especially when it was admitted on the pleadings that the Defendants had made returns, which presented a true and faithful exhibit of the conditions of the business of the agency, of which the Plaintiff had notice.

*Fourteenth.*—That it was a misdirection in the Court to charge the jury "that the burden of proof was with the Defendant, to show that the Plaintiff suffered no damage from the change of the place of deposit from Marshall & Co. to the office of Dorillus Morrison." *Story on Agency,* secs. 222, 236, 333; 1 *Amer. L. Ca.,* 675; *Folsom vs. Mussey,* 1 *Fairfield,* 297; *Edwards on Bailts.,* 128 *to* 131; *Platt vs. Hibbard,* 7 *Cow.,* 497; *Story on Bailts.,* 213–127; 1 *Phil. Ev.,* 195; 1 *Greenlf's Evi.,* 50.

*Fifteenth.*—That it was error in the Court to charge the jury that " if the Defendants had satisfied them that they had acted in good faith, then they were not liable;" because it was calculated to give the jury the impression that it was incumbent upon the Defendants to prove that they had acted in good faith, or, in other words, that the burden of proof was on the Defendants. *Cases cited to fourteenth; Story on Bailts.,* 213, 214, 216, 217.

*Sixteenth.*—That it was in error in the Court to charge the jury that " if there was a breach in the instructions the measure of damages was the value of the logs;" no damages having been averred or claimed in the complaint, and no evidence of any having been introduced on the trial. 1 *Am. Lead. Ca.,* 674, &c.; *Bell vs. Cunningham,* 8 *Curtis U. S.,* 289, &c.; 1 *Grah. on New Trials,* 272, 273.

*Seventeenth.*—That it was error in the Court to charge the jury " that the Defendants, as bailees of the Plaintiff, are liable to the Plaintiff, if they did not manage the property entrusted to them to the best of their ability for the benefit of the plaintiff;" there being no averment in the complaint that the Defendants did not manage the property to the best of their

ability, nor any other issue involving the manner in which said property was managed. 1 *Amer. L. Ca.*, 666, *and cases cited;* 1 *Greenlf's Evi.*, 50, 51.

*Eighteenth.*—That it was error in the Court to charge the Jury "that the damages to which the Plaintiff is entitled is the value of the property;" there being no averment of or claim for damages in the complaint; and even if there had been, it was error, because it took the question of damages entirely from the jury, and because there was no evidence of any damages, or evidence from which the jury or Court were authorized to infer any. 1 *Amer. L. Ca.*, 674, *and cases there cited;* 1 *Greenlf's Evi.*, 49.

*Nineteenth.*—It was error in the Court to refuse to charge the jury "that the Defendants are not shown to have appointed any sub-agents in any such manner as to throw the responsibility on the sub-agents;" because it took the question from the jury, and was calculated to mislead them, as it assumed that there was a responsibility on the part of the Defendants. *Greenlf's Evi.*, 49–51, &c.

*Twentieth.*—That it was error in the Court to charge the jury "that no evidence of neglect on the part of either the Defendants or their agents having been introduced, the Plaintiff could not recover;" as there was not a syllable of testimony addressed to any single act of neglect or misfeasance on the part either of the defendants or the sub-agents.

*Twenty-first.*—That the Court erred in refusing to charge the jury "that no evidence of neglect on the part of the Defendants having been introduced, the jury cannot regard the evidence introduced to establish the value of the Plaintiff's logs," as no evidence to that question had been introduced.

*Twenty-second.*—That the Court erred in refusing to charge the jury "that the Plaintiff, having failed to show any loss or damage by the deposit of the reports and proceeds at the office of D. Morrison, instead of at Marshall & Co's, cannot recover on that ground." *Folsom vs. Mussey,* 1 *Fairfield,* 297; 1 *Amer. L. Ca.*, 666, &c.

*Twenty-third.*—That the Court erred in refusing to charge the jury "that neglect, to render the Defendants liable, must have been so palpable as to amount to a wilful misuse or

abuse of the property." *Case cited above; Beardslee vs. Richardson,* 11 *Wend.,* 26.

*Twenty-fourth.*—That the Court erred in refusing to charge the jury " that the facts set up in the answer, as the agreement and understanding of the log owners, it being therein averred that the written instrument was a mere memorandum, and did not contain the agreement in detail; and that the averment, not being denied by the reply, must be regarded as admitted in the manner stated in the answer." 1 *Graham on New Trials,* 277.

*Twenty-fifth.*—That the Court erred in refusing to charge the Jury " that under the agreement set up in the complaint it was no part of the duty of the depositary to make out bills of sales for the various parties in interest, and the refusal of the depositary to do any act, can have no influence on the jury in making up their verdict against these defendants."

*Twenty-sixth.*—That the Court erred in refusing to instruct the jury " that having accepted logs of the committee as such the plaintiff cannot now disregard the committee and proceed for the value of his logs, even if the question of value had become material by the introduction of evidence of neglect on the part of the Defendants." 1 *Amer. L. Ca.,* 659, *and cases cited to point Seven.*

*Twenty-seventh.*—That the Court erred in admitting the testimony of the several witnesses called by the Plaintiff, to establish the value of the Plaintiff's logs, in the absence of proof of neglect or misfeasance on the part of the Defendants, or any offer to follow up the proof of value, by proof of negligence and consequent damages. *See cases cited to previous point, Greenleaf's Evi.,* 31, 50, 51.

*Twenty-eighth.*—That the Court erred in refusing to permit Defendants' counsel, on the cross-examination of John Rollins, Plaintiff's witness, to ask the question following, and to obtain the witness' answer thereto : " Would it be practicable for an owner of a single mark of these logs, to collect his logs from the bulk scattered in the Lake, as those logs were at that time."

*Twenty-ninth.*—That the Court erred in excluding the following question, propounded by Defendants' counsel on the cross-examination of John Rollins, Plaintiff's witness, and the

response thereto, viz: "Had not the committee made a con-
tract with Marshall Sterling for all the logs they were willing
to purchase that year."

*Thirtieth.*—That the Court erred in admitting the testimony
of John Rollins, in relation to the running and sale of a raft of
logs, belonging to Plaintiff and others, at St. Louis, which tes-
timony embraces the whole of the paragraph commencing in
folio No. 21, and ending in folio No. 22 of Defendant's "case."

*Thirty-first.*—That the Court erred in permitting the Plain-
tiff's counsel to put, and John Blaisdell, the Plaintiff, as wit-
ness, to answer, the following questions, viz: "Were the
notes of Starr, and Mow, and Eppley, good at the time
Morrison told you he had such notes?" *See folio No.* 34,
"*case.*" *Burrell vs. Phillips,* 1 *Amer. L. ca.* 653; 1 *Graham
on New Trial,* 251, 252, 253; 1 *Greenleaf's Evi.* 50.

*Thirty-second.*—That the Court erred in permitting the
Plaintiff's counsel to put, and the Plaintiff, as witness, to
answer, the following question, viz: "Were Starr, and Mow,
and Eppley, good in the fall of 1857?" *See folio* 35, "*case.*"
*Burnell vs. Phillips, cited above;* 1 *Greenleaf's Evi.* 50.

*Thirty-third.*—That the Court erred in permitting the Plain-
tiff's counsel to put, and the Plaintiff, as witness, to answer,
the following question, viz: "Would you have been willing
to take the notes of either of those parties (Starr, and Mow,
and Eppley) in the fall of 1857." *See folio* 36, "*case.*" 1
*Graham on New Trial,* 238, 239, 243, 244, *and* 245; 1 *Green-
leaf's Evi.* 52.

*Thirty-fourth.*—That the Court erred in permitting Plain-
tiff's counsel to put, and the Plaintiff, as witness, to answer,
the following question, viz: "Could you have used these
notes (Starr, and Mcw, and Eppley's) in paying your debts in
the fall of 1857?" *See folio* 37; *Story on Agency, Sec.* 220; 1
*Greenleaf's Evi.* 52.

*Thirty-fifth.*—That the Court erred in restricting Defendants'
counsel in his cross-examination of the Plaintiff, as a witness,
to any particular day or days, or visit or visits, which he had
paid to Mr. Morrison, at his office in St. Anthony, for the pur-
pose of ascertaining the condition of the business in the hands
of the Defendants, the amount of his logs which they had col-

lected and disposed of, and the amount coming to him on the settlement of said business; said Plaintiff having testified on his direct examination, that Mr. Morrison (who had charge of the books after they arrived here) had never offered to him in St. Anthony any notes, or exhibited or offered to exhibit to him, any books, notes or accounts. *See folios* 40, 41, 42, 43, *of "case."* 1 *Greenleaf's Evi.* 446-9.

*Thirty-sixth.*—The Court erred in excluding the following question, propounded to said Plaintiff, as a witness, on his cross-examination by Defendant's counsel, viz: "Were you not informed by the committee, or its agents, at this time (Spring of 1858) that the business was not yet wholly settled?" *See folio* 48, "*case.*" 15 *U. S. Dig., page* 257, *Sec.* 352-4; 1 *Greenleaf,* 108 *and note* 2, *with cases therein cited.*

*Thirty-seventh.*—The Court erred in permitting the Plaintiff's counsel to put, and the Plaintiff, as witness, to answer, the following question, viz: "When you went to Lake Pepin, what did you learn in relation to the Starr note, and your ability to exchange it for a part of the mill." *See folio* 50, "*case.*"

*Thirty-eighth.*—That the Court erred in permitting the Plaintiff's counsel to put, and the Plaintiff, as a witness, to answer the following question, viz: "What was the current report about the pecuniary standing of Mow and Eppley, at the time Morrison offered you their note?"

*Thirty-ninth.*—The Plaintiff having had due notice of the fact, that the Defendants made their returns to, and deposited with D. Morrison instead of Marshall & Co., and having made no objection to the change, his silence was a recognition of their act, and it is too late now for him to complain, even if such change had resulted to his actual loss. *Comcier vs. Ritter,* 1 *Amer. L. Ca.* 659, 670, 671; *Story on Agency,* 255 *to* 258.

*Fortieth.*—That all acts of neglect on the part of the Defendants, charged in the complaint, except that respecting the neglect and refusal to furnish Plaintiff with a full and specific account of when and where they sold his logs, what kind of pay they received therefor, and how much they had expended in the management thereof, having been fully met and excused by the averments in the answer, and the admissions by the reply; and the Plaintiff himself having testified on the trial

that his demand for an account was not a demand for an account of his own logs, but of the whole of the transactions of the agents; he has failed to sustain a single averment in his complaint. It was therefore error in the Court to refuse a judgment on the pleadings in the first place, a judgment of dismissal in the second, and a new trial in the third. 1 *Green-leaf Evi.* 63.

*Forty-first.*—The Court erred in refusing a new trial because of the excessive damage found by the jury, because the evidence was insufficient to justify the verdict; because it was contrary to the law and the evidence; because of error occurring during the progress of the trial; and because there was no cause of action stated in the complaint. *How vs. Cook*, 21, *Wend.* 29; *Clapp vs. Hud. Riv. R. R. Co.*, 19 *Barb.* 463; 1 *Graham's New Trial*, 278 *and* 279, *and cases there cited;* 26, 2, 3, 4, 5, 6, 7, 8, *Wordell vs. Hughes*, 3 *Wend.* 419; 1 *Grah. N. T.*, 368, 369, 370, *and* 375–6; 5 *U. S. Dig. page* 440, *Sec.* 239; 8 *U. S. Dig., page* 286, *Sec.* 41; 9 *U. S. Dig., page* 343–4, *Secs.* 25, 26, 48, 62; 10 *U. S. Dig., page* 335, *Secs.* 62, 73, 80, 83.

Points and authorities of the Respondent.

*First.*—The complaint states facts sufficient to constitute a cause of action in the nature of *trover.* 1 *Espinasse R.* 31; 1 *Johns., cases* 406; 10 *Johns.* 172; 1 *Cow.* 322; 9 *Wend.* 168.

*Second.*—The Defendants having got possession of the property of the Plaintiff, under the contract, as *agents for a valuable consideration*, and as *bailees for hire*, by their subsequent violation of the duties imposed upon them by the contract, and by their neglect on demand to pay the Plaintiff the proceeds of the sales by them made, rendered themselves subject to the charge of converting the property of the Plaintiff to their own use.

*Third.*—The measure of damages in trover is the value of the property converted.

*Fourth.*—The Defendants by their answer admit the violation of the conditions of the contract, and allege matter tending to show that the violation was unavoidable, and not for want of due and ordinary diligence on their part, and not of such a nature as to damage the Plaintiff.

*Fifth.*—The Plaintiff by his reply controverts all that portion of the answer which would, if admitted, form any defence, and alleges new matter showing that the acts of the Defendants in violation of the terms of their contract of agency were such as to work great damage to the Plaintiff.

*Sixth.*—The Plaintiff, to sustain his case by evidence, had only to prove the amount and value of the property converted, and, under his reply, to show the damage resulting to him from the acts of the Defendants.

*Seventh.*—The evidence, which was properly admitted, was amply sufficient to justify the verdict.

*Eighth.*—The Defendants by a total absence of all evidence failed to sustain their answer.

*Ninth.*—The charge of the Judge was correct in point of law.

*Tenth.*—The order denying a new trial was therefore right.

D. Cooper, Counsel for Appellants.

D. A. Secombe, Counsel for Respondent.

*By the Court.*—Emmett, C. J.  The Appellant has raised an unusually large number of points in this case, and others still are suggested by an examination of the record. But it will not be necessary to notice them in detail, as we think that all the errors committed are justly attributable to the one great fundamental mistake, of treating this as an action of trover for the logs confided by the Plaintiff to the Defendants under the agreement set out in the pleadings. This erroneous view of the case seems to have been taken alike by the Court and the counsel for the Plaintiff.

Had the Defendants become possessed of the Plaintiff's logs without authority from him, and converted them to their own use, or being lawfully possessed, had they afterwards made any disposition of them contrary to authority, they would have been liable in damages for the conversion, and the measure of such damage would have been the value of the logs. But when, as in this case, a party comes into possession of property, under an agreement with the owner, and afterwards sells it,

13

in pursuance of the terms of the agreement, for the sole use and benefit of the owner, he cannot, by any possibility, be guilty of converting the property, originally intrusted to him, and his only responsibility results from the disposition he may make of the proceeds of such sale. If the proceeds be in money, and he refuse to pay it over, upon reasonable demand, or contrary to the terms of the agreement with the owner, he would be liable therefor, as for so much money had and received ; or if the proceeds consist of property other than money, he, upon a like refusal, would be held to have converted it, the proceeds, to his own use, and would be liable in damages, the measure of which would be the value not of the property originally committed to his charge, for that having been sold in pursuance of authority, has never been converted, but the value of the property received in exchange therefor.

It will readily be perceived from this view of the law, that the Judge below erred in every instance, where he admitted evidence as to the value of the logs at any time ; and also in charging, as he did, that the value of the logs was the measure of damages. The real question, if the jury found that the Defendants converted or refused to pay over the proceeds, was as to the amount of the nett proceeds of these sales, if they consisted of money, and if of anything else, the value thereof, whether the logs sold for more or less than they were worth. The Defendants could not be held for more than they received on the sale of the logs, unless they wilfully or negligently sold them below their value, in which case there should have been an allegation to that effect, and a special claim for the damages sustained by reason thereof.

So too in regard to the allegations that the Defendants neglected to make deposits, and to make exhibits of the condition of the sales and proceeds, as required by the agreement under which they acted. Special damage for each neglect or omission complained of should have been alleged and proved, if denied. But in neither instance would the damage depend upon the value of the logs sold, much less upon their value at the time they received them from the Plaintiff, for they might have been of far greater value then, than at the time they were sold, The damages would depend rather upon the value of

the property in the hands of the Plaintiff, at the time of the neglect complained of, and how the Plaintiff's interest therein was affected by this neglect or omission. If these acts or omissions amounted to a conversion, the Defendants would be liable to the Plaintiff for the value of his interest in the property converted, deducting all charges contemplated by the agreement set forth; but if the proceeds of the sales were in money, it is difficult to see how the omission to make deposit, or to make the exhibit required, or even the refusal to pay over on proper demand, could damage the Plaintiff in a sum greater than his interest in the nett proceeds in the Defendants' hands.

This judgment cannot be sustained in any aspect of the case. To enable the Plaintiff to recover by way of damages for a violation of the contract by the Defendants, it is necessary that the damage should be averred. Here no damage is alleged. There are alleged violations of the contract, but these allegations are made apparently for the sole purpose of establishing a conversion of the logs. If there was a conversion at all, it was of the proceeds of the sale of the logs—not of the logs themselves. What these proceeds were, or what was their value, does not appear in the complaint, nor is any damage alleged in regard to their conversion. All these things should have appeared by averment, and proof if denied, to enable the Plaintiff to recover in any event.

The order denying a new trial is reversed, and a new trial awarded.