## McINERNEY & CONWAY FINANCE CORPORATION v. SMITH
(No. 1647; Jan. 14, 1931; 295 Pac. 273)

For the appellant there was a brief by *Kinkead & Pearson,* of Cheyenne, Wyoming, and oral argument by *Mr. Allan A. Pearson.*

For the respondent there was a brief by *John F. Delaney,* of Cheyenne, Wyoming, and oral argument by *Mr. Delaney.*

BLUME, Justice.

On December 28, 1927, the McInerney and Conway Finance Corporation, hereinafter referred to as the plaintiff, commenced an action before a justice of the peace, aided by attachment, against one Floyd Smith, hereinafter referred to as the defendant, seeking to recover the sum of $153.75 on a promissory note of $138.75 given by the defendant on October 29, 1927. No pleadings were filed by the plaintiff when the action was commenced, and the cause of action appeared only from the affidavit of attachment. On January 5, 1928, the defendant filed an answer and counterclaim. In the counterclaim it was alleged that defendant, on October 29, 1927, purchased from the plaintiff, through its agent, O. C. Martin, a Ford roadster of the reasonable value of $125; that on the 17th day of December, 1927, the corporation, by its agent O. C. Martin, "did wrongfully take from said defendant and convert to its own use said car, and that it does now and has at all times since that date wrongfully held said car and wrongfully withheld it from the possession of this defendant; that by reason of said conversion, this defendant has been damaged in the sum of $125, which is the fair and reasonable value of said automobile." The parties appeared before the justice of the peace on January 11, 1928, and the record of the justice recites that the corporation then formally pleaded its cause of action, alleging among other things the execution of the note of the defendant and that it was secured by a chattel mortgage on the Ford roadster above mentioned; "that since the commencement of this suit, plaintiff acting under authority given it in said mortgage, took said car into possession, sold same at private sale for $25.00 and has credited the amount on said note; that there is now due and owing to plaintiff from defendant $113.75." The case was tried to a jury, who disagreed. It was then tried before the justice, who rendered judgment for plaintiff. Upon appeal to the District Court, a motion to dismiss was overruled, and from that ruling the case was brought

to this court. That appeal was dismissed. McInerney & Conway Finance Corporation v. Smith, 39 Wyo. 191, 270 Pac. 664. The case was then tried in the District Court, and this resulted, on January 27, 1930, in a judgment of $102.30 in favor of the plaintiff. From this judgment the defendant has appealed to this court. A few other facts will be mentioned later on in the opinion.

1. When the case came on for trial in the District Court, the defendant filed a motion for judgment upon its counterclaim, on the theory that no reply thereto had been filed. The court overruled the motion and error is predicated thereon. This point was not raised until the case was tried in the District Court. The record in the case is in a peculiar condition. Plaintiff did not plead in the justice court, at least formally, until January 11, 1928, and if that pleading is to be taken as plaintiff's petition, then the defendant failed to answer it, and the counterclaim, which is an integral part of defendant's pleading, could not be considered. Defendant's counsel probably thought that plaintiff pleaded sufficiently when it filed the affidavit for attachment in the case on December 28, 1927, and if we assume with them that this is true, then we find the situation to be this: Plaintiff pleaded his cause of action on December 28, 1927; on January 5, 1928, defendant filed his answer and counterclaim, alleging in the latter that the plaintiff converted his Ford roadster. Thereafter, and on January 11, 1928, the plaintiff pleaded among other things that it took possession of the roadster under authority given it in the chattel mortgage already mentioned, and sold it at private sale. While this allegation was not a specific denial of the conversion, it stated a rightful possession and sale—the exact contrary of the allegation of the defendant—and under the circumstances of the case, and in view of the fact that the objection now considered was made for the first time in the District Court, we cannot see how we can regard this allegation otherwise than as a reply to the allegation of conversion.

2. Counsel for the defendant argue that the uncontroverted evidence in the case, and the admission of plaintiff in his pleading that it sold the roadster in question at private sale, show that plaintiff was guilty of the conversion alleged in the counterclaim. Three grounds for such conversion are urged, each of which we shall now proceed to consider.

(a) It is first urged that a chattel mortgage can be foreclosed only according to the method pointed out by statute, and that to sell such chattel at private sale constitutes a conversion. The mortgage in this case provides that under certain contingencies, which are not in question here, the mortgagee may "take possession of said property wherever found, and sell the same at private sale, without notice, or to the highest bidder for cash at any public sale" etc. Counsel for the defendant argue that such power, granted in the mortgage, is invalid. The statutory method for foreclosing a chattel mortgage is provided by Section 4699, Wyo. C. S. 1920, and subsequent sections. Section 4699 just mentioned provides:

"Every mortgage, bond, conveyance or instrument intended to operate as a mortgage, containing and giving to the mortgagee, or any other person a power to sell the property described therein upon default being made in the condition of such mortgage, bond, conveyance or instrument, intended to operate as a mortgage, may be foreclosed in the cases and in the manner hereinafter specified."

Section 4700, Wyo. C. S. 1920, provides that to enable a person to foreclose such chattel mortgage, it shall be requisite, first, that some default shall have occurred in a condition of such mortgage; second, that no suit or proceeding shall have been instituted at law to recover the debt or obligation then remaining secured by such mortgage, and third, that such mortgage has been duly recorded. Other sections of the statute provide for giving public notice and for holding a public sale. Are these provisions exclusive, rendering an agreement for private sale void?

At 11 C. J. 709, 710, it is said:

"A stipulation permitting a public or private sale is valid, although a statute provides for foreclosure by public sale and in such case the mortgagee may elect the method which he will pursue."

Again at 11 C. J. 700, it is said:

"The mortgagor may waive the requirements of the statute, and the mortgagee may proceed under a power of sale contained in the mortgage, or a bill in equity may be maintained, especially where the legal remedy is inadequate. Under other statutes the methods of foreclosure provided are held to be exclusive."

In Section 971 of Cobbey on Chattel Mortgages, it is said:

"Notwithstanding the statute provides how chattel mortgaged property shall be sold on default, the mortgagee, by express stipulation of the mortgagor, even subsequent to the execution of the chattel mortgage, may sell the property without giving public notice of the sale; and an agreement between the parties to a mortgage to sell at private sale would be valid, even if the consideration of the agreement be that the mortgagee, on waiver of public notice, would accept a less sum than that secured."

In the case of Patrick v. Meserve, 18 N. H. 300, the court said that "it needs no argument to prove that a sale of the chattel by the mortgagee, with the assent of the mortgagor, is just as effectual as a sale under the statute with the formalities prescribed by law, for these formalities, made for the benefit of the mortgagor, may be waived by him."

In the case of Reynolds v. Thomas, et al., 28 Kans. 810, 815, the court said:

"Again, the statute in relation to mortgages of personal property provides that the mortgagee or his assignee may proceed to sell the mortgaged property after condition broken, after having first given notice of the time and place of sale by a written or printed handbill posted up in at

least four public places in the township or city in which the property is to be sold, at least ten days previous to the sale. Notwithstanding this provision of the statute, the mortgagee, by express stipulation of the mortgagor, even subsequent to the execution of the chattel mortgage, may sell the property without giving public notice of the sale, and an agreement between the parties to a mortgage to sell at private sale would be valid, even if the consideration of the agreement be that the mortgagee, on waiver of public notice, would accept a less sum than that secured.''

The statutes of Nebraska relating to foreclosure of chattel mortgages are substantially the same as ours, and we have probably borrowed our law on this subject from that state. The point now under consideration was before the Nebraska Supreme Court in the case of Lexington Bank v. Wirges, 52 Nebr. 649, 72 N. W. 1049, 1050, and the court in that case said among other things:

''The legislature has not established, nor attempted to do so, an inflexible rule for the foreclosure of chattel mortgages; but said Chapter 12 has merely specified a method of sale by which the equity of redemption of the mortgagor may be extinguished. That the mode therein prescribed is not the only one the mortgagee may pursue is obvious. A verbal chattel mortgage cannot be thus foreclosed, since such a mortgage cannot be recorded as required by Section 2 of said Chapter 12, which is a prerequisite to a statutory foreclosure. And yet this court has upheld the validity of a verbal chattel mortgage. (Conchman v. Wright, 8 Neb. 1; Sparks v. Wilson, 22 Neb. 112, 34 N. W. 111.) The rights of the mortgagor may be cut off by an action in equity to foreclose the mortgage, and undoubtedly mortgaged chattels may be sold in accordance with the stipulation in the mortgage, although different from the mode laid down in said Chapter 12, especially where the rights of third parties are not involved. (Faeth v. Leary, 23 Neb. 267, 36 N. W. 513; Chaffee v. Atlas Lumber Co., 43 Neb. 225, 61 N. W. 637 (47 A. S. R. 753) ; Scott v. Davis, 4 Kan. App. 488, 44 Pac. Rep. 1001; Jones, Chattel Mortgages, Sec. 709.) The statute prescribing the time, place, and manner of sale was designed for the protection of the mortgagor, but he may waive his right thereunder if he sees

proper to do so. The right of a mortgagor of chattels to waive the benefit of the statute relating to foreclosure has been recognized by this court. (See Callen v. Rose, 47 Neb. 638.) By proper stipulation in the mortgage the mortgagor may dispense with a public auction or with the mortgaged property being in actual view at the time of sale. (Darnell v. Darlington, 28 S. Car. 255, 5 S. E. 620; Stevens v. Breen, 75 Wis. 600, 44 N. W. 645; Welcome v. Mitchell, 81 Wis. 566, 51 N. W. 1080; Rose v. Page, 82 Mich. 105, 46 N. W. Rep. 227; Harris v. Lynn, 25 Kans. 281, (37 A. S. R. 253); Reynolds v. Thomas, 28 Kans. 810.)''

And the same court in the case of Marseilles Mfg. Co. v. Perry, 62 Neb. 715, 87 N. W. 544, 545, said as follows:

''The mortgagor of chattels can waive the benefit of the provisions of the statute relating to foreclosures. Lexington Bank v. Wirges, 52 Nebr. 649, 72 N. W. 1049. There is no doubt of the mortgagee's right, under the mortgage, to take possession of the mortgaged property upon default, and to foreclose the mortgage by selling the property at private sale. In making such sale he must obtain a fair price for the property. Under the terms of this mortgage plaintiff had no right to the possession of the property, except for the purpose of foreclosure, and must proceed with his foreclosure without unreasonable delay. Murray v. Loushman, 47 Nebr. 256, 66 N. W. 413; Jones, Chattel Mortgages (3d. Ed.) 773.''

To the same effect see also Ballou v. Cunningham, 60 Barb. (N. Y.) 425; Chamberlain v. Martin, 43 Barb. (N. Y.) 607; Rose v. Page, 82 Mich. 105, 46 N. W. 227; Geiser Mfg. Co. v. Krogman, 111 Iowa 503, 82 N. W. 938; Great Northern State Bank v. Ryan, (C. C. A.) 292 Fed. 10; Harbour-Longmire Co. v. Reid, 124 Okl. 77, 254 Pac. 29; Jones on Chattel Mortgages (5th Ed.) Sec. 791; Levy v. Sheehan, 1 Wash. 149, 23 Pac. 802; Scott v. Davis, 4 Kans. App. 488, 44 Pac. 1001.

Counsel for defendant cite a number of cases as holding the contrary. We do not find any of the cases, aside from those from Idaho, in point, for they do not involve an agree-

ment for private sale. In Idaho the statutes provide that the enforcement of a right under a mortgage must be in accordance with such statutes. Rein v. Callaway, 7 Ida. 634, 65 Pac. 63. We have no such law in this state, and these cases are not, accordingly, in point. The provisions of the statute for public sale, made for the advantage of the mortgagor, on the whole doubtless subserve a good purpose. Still we know that sales of mortgaged property are frequently purely formal, at which the mortgagee usually bids in the property, and at his own price, so that a private sale might often be more advantageous to mortgagors than a public one. In any event, we cannot, in view of the authorities, and without further legislative sanction, hold a contract for private sale to be invalid.

(b) Again counsel for the defendant contend that the plaintiff was guilty of conversion when he made the sale of the roadster, for the reason that the record shows that such sale was made at a time when a suit was pending, in violation of Section 4700 already referred to above. Whether that section has any application when a sale is made privately in accordance with the agreement of the parties need not be determined. The record is not clear whether the sale was made at a time when a suit for the recovery of the debt secured by the mortgage was pending. The plaintiff alleged that it was made during that time. The defendant himself alleged that it was made on December 17th, 1927, before the action at law was commenced. The testimony given on the point does not show the time. There is, accordingly, no way for us to tell which of the allegations made in that connection is true. If the sale was made after the commencement of plaintiff's action, we encounter the rule laid down in the case of Strehlow v. McLeod, 17 N. D. 457, 117 N. W. 525, 526, 17 Ann. Cas. 423, but not necessary to be passed on here, namely, that a counterclaim not existing at the time of the commencement of plaintiff's action cannot be set up in that action. If one the other hand the defendant's allegation is true, then no suit was pending

when the sale was made and the objection under consideration is not good. In view of the facts and the record in this case, we do not feel called upon to treat the plaintiff's allegation as conclusive against it, in order to make that the basis for reversing the case, but must consider the instant objection as not presented by the record.

(c)   Counsel for the defendant further contend that the fact that plaintiff, according to its allegation, made the sale for the sum of $25.00, in face of the evidence that the property was well worth over $125, makes the plaintiff guilty of conversion. It needs, of course, no argument that a mortgagee may not sell at private sale for any price he pleases, and that he is accountable for his action. 11 C. J. 709. Whether or not, however, he is guilty of conversion, as alleged by the defendant, is another matter. Counsel have cited us to no authority which so holds. The cases referred to by them simply pass upon the question of accountability, and do not touch the question of conversion. The plaintiff, in making the sale of the roadster, and executing the authority granted by defendant, acted as trustee or agent of the latter. Authority to make the sale privately was expressly granted. Was plaintiff guilty of conversion in making it for a lower price than it should have brought? In 26 R. C. L. 1119 it is said:

"It is well settled that there is a conversion for which trover will lie where there has been an unlawful sale of the property of another by one who assumes to be the owner, or acting for the owner, or by one who acts on behalf of a person other than the owner. However, the rule stated applies only when no authority exists, and the mere fact that a person, rightfully in possession of property with authority to sell, sells the property at a lower price than the one authorized is not generally regarded as making him guilty of a conversion, though he may be liable in a special action on the case or an action for breach of contract. In such cases, the person does not exercise any right of ownership of the property, or do anything but what he was authorized to do."

In the note in 23 L. R. A. N. S. 573, it is said:

"It, without doubt, is the general rule that where one is rightfully in possession of property with authority to sell, the mere fact that such person sells the property at a lower price than the one authorized does not make him guilty of conversion, but the proper remedy of the owner of such goods is a special action on the case or an action for breach of contract."

The first case directly in point seems to be that of Dufresne v. Hutchinson, 3 Taunt. 117, 128 Eng. Rep. 48, decided in 1810, where it was held that if a broker, being authorized to sell goods for a certain price, sells them at a lower price, he is not liable in trover for the amount of the goods. The reasoning of Lawrence, J., is interesting. He said on the point:

"Since the plaintiff sued out a writ against Bowdler and Morley jointly with the defendant, it must be taken that he meant to declare in such a form of action in which he could recover; it must be presumed, therefore, that he would declare for money had and received, not in trover; for the plaintiff had given to Bowdler and Morley an authority to sell, and therefore could not recover against them in trover. But by declaring for money had and received, the plaintiff, would affirm the sale: besides, if trover had been the right form of action, it would be a question whether the discharge made to one tort feasor would not be a release to all: if it were otherwise, the plaintiff might get paid by each defendant to the whole amount of the injury sustained."

The question arose in a New York case in 1819 in the case of Sargent v. Blunt, 16 Johns. 74, where the court said:

"In the case of Cairns & Lord v. Bleecker, (12 Johns. Rep. 304) though we do not expressly recognize the principle adopted in Dufresne v. Hutchinson, it is pretty evident that we are inclined to think it right. If every departure from instructions is to expose a party to an action

of trover, I should consider it as introducing a new rule, which might operate injuriously; there is no need of this refinement. An action on the case is well calculated to redress any injury arising from a breach of instructions. In this case, the defendant was authorized to sell the chronometer for a particular price. The complaint is not, that he sold, but that he sold it for a less sum, and thus violated his orders. The selling was not a conversion; but selling for a less price was a breach of duty. If the plaintiff's doctrine be right, then I do not see why he could not maintain trover against the purchaser; for if the act was tortious, no property was acquired; and to maintain trover the act must be tortious. The sale was not a tortious act.''

In Moore v. McKibbin, 33 Barb. (N. Y.) 246, decided in 1860, the facts appear in the opinion, which, so far as it relates to the question in hand, is as follows:

''The defendant, as appears from the evidence, had authority to sell the horses, but not at the price. He was to sell for not less than $500, and actually sold them for $200. The case of Sargent v. Blunt, (16 John. (N. Y.) 74) is directly upon the point that an action for the conversion of the property will not lie against an agent, for selling under the price fixed. The same rule is laid down in Cairns & Lord v. Bleecker (12 id. 300) though the point was not there decided. (See also McMorris v. Simpson, 21 Wend. 610.) This must be so upon principle, or else the purchaser would get no title. No one, I apprehend, would pretend that the purchaser did not get a good title, because the agent having power to sell, sold for a price something less than he was instructed to sell at. If the purchaser gets a good title, it must be upon the ground that the agent had the right to sell. If he could sell and transfer a valid title, the sale could not be tortious. The wrong in such a case consists, not in the act of selling, which is authorized, but in the breach of duty, in selling at the reduced and unauthorized price. It is not the want of authority, but the exercise of it contrary to the measure prescribed, which constitutes the wrong.''

The Court of Appeals of New York had this question before it in 1877 in the case of Laverty v. Snethen, 68 N. Y.

522, 23 A. S. R. 184, and after a full discussion of when an agent is guilty of conversion and when not, states as follows:

"The result of the authorities is that if the agent parts with the property, in a way or for a purpose not authorized, he is liable for a conversion, but if he parts with it in accordance with his authority, although at less price, or if he misapplies the avails, or takes inadequate for sufficient security, he is not liable for a conversion of the property, but only in an action on the case for misconduct."

This case was cited and applied in Monks v. Bruce, (City Ct.) 3 N. Y. S. 419.

The Supreme Court of Georgia in Loveless v. Fowler, 79 Ga. 134, 4 S. E. 103, 11 A. S. R. 407, said:

"There was authority to sell, and that being so, the sale on a credit was a mere violation of instructions as to the terms of sale. Such a sale would pass title, unless the purchaser knew of the violation of instructions, and a sale which passes title is not a conversion, though it may be an abuse of authority. It is like selling at a less price than that named in the agent's instructions."

An interesting discussion of the point here involved will be found in Aylesbury Merc. Co. v. Fitch, 22 Okl. 475, 99 Pac. 1089, 23 L. R. A. N. S. 573, and other authorities sustaining the foregoing view are Alleghany etc. Co. v. Hillman & Sons Co., 275 Pa. 900, 118 Atl. 900; Mechem on Agency (2nd Ed.) Sec. 1254; 2 C. J. 720; 28 Am. & Eng. Ency. L. (2nd Ed.) 700; 31 Cyc. 1454, note 4. A similar result, so far as the point under consideration is concerned, is reached in those cases which hold that if a mortgagee has exercised a power to sell at private sale, he is chargeable only in equity on a bill of accounting and redemption. Zadek v. Burnett, 176 Ala. 80, 57 So. 447; Harmon v. Dothan Nat. Bank, 186 Ala. 360, 64 So. 621. If such mortgagee is only liable in equity, he cannot be held to be guilty of conversion. In point, too, are the cases which

hold that if a mortgagee expressly or impliedly consent to the sale of the property mortgaged to him, he cannot sue in tort by reason thereof. Adamson v. Moyes, 32 Ida. 469, 184 Pac. 849.

In the case of Lewis v. Metcalf, 53 Kan. 217, 36 Pac. 345, plaintiff, who was mortgagee of certain personal property, sued for conversion of it. It appeared that he had given his consent to the sale. The court held that inasmuch as the proof was clear that the defendant came lawfully into possession of the property and sold it by plaintiff's authority, and that inasmuch as no amendment to plaintiff's petition was made, plaintiff had failed to prove his cause of action.

It is clear under these authorities, we think, that plaintiff cannot be held guilty of conversion, and if it was guilty at all, was guilty of a breach of contract, express or implied, to make a fair sale of the property. This distinction cannot be ignored, although forms of action have been abolished in this state, and although procedure has lost the dominant position which it once occupied in our law. As has been said, there must be some consistency in the practice of the law. Phelps D. & P. Co. v. Halsell, 11 Okl. 1, 65 Pac. 340. How this consistency would be destroyed by holding that plaintiff was guilty of conversion has already been indicated by some of the decisions from which we have quoted. And we might add that the damages recoverable in case of a tortious sale might be altogether different from those recoverable in case of breach of contract. Chase v. Blaisdell, 4 Minn. 90 (Gil. 60); Alleghaney etc. Co. v. Hillman & Sons Co., supra.

3. Section 4134, Wyo. C. S. 1920, provides that if a contract is usurious, as was shown to be true in the case at bar, the plaintiff shall only recover the principal, without interest and that the defendant shall recover his costs. The court carried out the provisions of this section except as to the counterclaim, and assessed costs in the sum of $4.77 in favor of the plaintiff in connection with the defense of such counterclaim. We see no error in this action. The counter-

396

claim was separate and distinct from the cause of action sued on by the plaintiff.

It follows, from what we have said, that the judgment of the trial court should be affirmed, and it is so ordered.

*Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.