# CONWAY v. SKIDMORE, ET AL.

(No. 1870; March 12, 1935; 41 Pac. (2d) 1049)

For the appellants, the cause was submitted upon the brief of *Edward Lazear,* of Cheyenne.

For the respondent, the cause was submitted upon the brief of *John Delaney*, of Cheyenne.

KIMBALL, Chief Justice.

This is an action commenced in a justice of the peace court by plaintiff, the assignee of a conditional sale contract, to recover from defendants, the buyers of the property, a deficiency claimed to be due after the property had been retaken and resold by plaintiff and the net proceeds of the resale credited on the unpaid purchase price. In the justice court the verdict and judgment were for defendants. On appeal to the district court evidence was taken before a jury, but when each side requested a directed verdict, the jury was dismissed, and the court rendered judgment for plaintiff for the amount claimed. The defendants have appealed to this court.

Defendants, husband and wife, on January 10, 1931, bought of Modern Home Appliance Company a radio, paying $25 of the purchase price and signing a conditional sale contract whereby they agreed to pay the rest ($155.40) in twelve equal monthly instalments, with interest after maturity at the highest legal rate, "together with any collection expenses incurred by the seller or his assigns." The contract provided that title to the radio was to remain in the seller or assigns until all amounts due were paid. On failure of the buyers to pay any monthly instalment, the seller or assigns might declare all remaining instalments immediately due and payable, take possession of the radio, and "make such disposition thereof as may be deemed desirable and all payments made shall be retained as liquidated damages for the use of said article, or said article may be sold with or without notice at public or private sale and the proceeds thereof, less expenses, credited upon the amount unpaid and in either event, as liquidated damages for breach of this contract. In case of deficiency, the undersigned agrees to pay the seller or his assigns, said deficiency, and does hereby confess judgment in the amount of such deficiency."

The contract was assigned to plaintiff by the seller. After defendants failed to pay the first instalment due February 18 and the second due March 18, the plaintiff, on March 23, took possession of the radio and advertised it for sale at public auction.

The advertisement was evidently intended as the notice which the statutes (§§ 71-115 to 71-118, R. S. 1931) provide for in case of foreclosure of a chattel mortgage containing a power of sale. It was headed "Notice of Foreclosure Sale"; referred to default in payments due under a "chattel mortgage," and contained the recitals required by the statute (§ 71-118). It gave notice that the property would be sold "at public auction to the highest bidder for cash at the store

room known as The Modern Home Appliance Company at 1821 Capitol Avenue, Cheyenne, Laramie County, Wyoming, on the 10th day of April, 1931, at ten o'clock in the forenoon of said day to satisfy the amount secured by said mortgage."

The property was sold for $35. The claimed expenses of sale were 75 cents for drayage, $13.88 for publishing the notice of sale and $20 for attorney's fee, total $34.63. Though the expenses were only 37 cents less than the amount for which the property was sold, defendants apparently were credited with $1.40, and this action was then brought to recover from defendants the deficiency ($154) and $15 attorney's fee for prosecuting the action. The judgment was for these amounts and interest and costs, totalling $205.73.

The cash selling price of the radio was $166. A calculation on the back of the conditional sale contract shows how the amount due from defendants was arrived at. The cash payment of $25 was deducted, leaving $141, which was described as the "unpaid balance before adding carrying charge." A carrying charge of $14.10 was then added, making the "amount due by purchaser" $155.10.

Defendants contend that the contract was in effect a borrowing of $141 with an agreement to pay $14.10 interest, which was usurious in view of the requirement that the loan be repaid in monthly instalments. The contention finds no support in the authorities. The fallacy is in assuming that the transaction must be treated as a borrowing of money instead of a sale of property. The amount which defendants agreed to pay for the radio, as shown by the conditional sale contract, was $25 paid at the time and $155.40 to be paid in the future. There was no evidence to require a finding that the sale on credit was a cloak for a usurious loan. It was one of those familiar mercantile transactions in which a dealer selling on credit asks

more than the cash price. In such case the amount added to the cash price to make the credit price may be fixed on consideration of many things which may increase the risk or reduce the profits. See Ricker v. Fay Securities Co., 110 Calif. App. 750, 294 Pac. 732; In re Bibbey, 9 F. (2d) 944, 946. The cases appear to be in harmony in holding that the owner of property may have one price for cash and another for credit and that the difference between the two is not considered a charge of interest unless the buying and selling was a pretense to escape the usury laws. 66 C. J. 183; 27 R. C. L. 214; note 48 A. L. R. 1442. The difference between the two prices is frequently called a carrying or service charge. See, Manufacturers Finance & Trust Co. v. Stone, 251 Ill. App. 414; Standard Motors Finance Co. v. Mitchell Auto Co., 173 Ark. 875, 293 S. W. 1026; Commercial Credit Co. v. Shelton, 139 Miss. 132, 104 So. 75; Wilson v. J. E. French Co., 214 Calif. 188, 4 P. (2d) 537.

The trial court was justified in finding that the "carrying charge" of $14.10, added to the cash selling price of the radio, was not interest, but a part of the credit selling price which defendants agreed to pay, and that the transaction was a sale of property, as it purported to be, and not a loan or forbearance of money.

The persons present at the resale of the property were plaintiff's attorney who cried the sale; Mr. Tish, plaintiff's employee, who bought the property, and Mr. Worland, an undertaker, who occupies the storeroom, 1819 Capitol Avenue, next to the storeroom 1821, mentioned in the notice of foreclosure.

In plaintiff's case in chief Mr. Tish testified substantially as follows: He was bookkeeper and had charge of collections for plaintiff, and had been active for plaintiff in this particular transaction. When the radio was taken from defendants' possession, it was "dropped" at 1819 Capitol Avenue. He went to that

place at about 10 o'clock on the day of the sale and looked for bidders, making inquiry a couple of times at 1821 where he saw the proprietor of the Modern Home Appliance Company and two other men whom he did not know. The sale was had a few minutes past 10 o'clock. The witness at first stated that the sale took place inside the connecting door between 1819 and 1821, but later testified that "the radio was actually sold at 1819 Capitol, Paul Worland's." He stated, "There were no bidders that actually wanted the radio." There were two bids. The attorney for plaintiff bid $33.88, sufficient to pay the attorney fee and costs of advertising the sale. The witness then bid $35 for which the radio was sold to him.

Mr. Worland, called by plaintiff in rebuttal, also testified as to what took place at the sale. According to his testimony, he and Mr. Tish waited outside his place of business in an entryway in front of the doors to 1819 and 1821 Capitol Avenue until a minute past ten o'clock; they then, in company with the attorney, went into the witness' place of business, 1819, and thence downstairs to the basement under 1821 "where the radio was in storage," and there had the sale. Mr. Worland was asked to make a bid, but did not do so, and the only bid was by Mr. Tish.

The attorney who represented the plaintiff at the sale and throughout the litigation did not testify in regard to the sale, but from his brief it appears that plaintiff contends that the sale was in the basement as testified by Mr. Worland and not at 1819 Capitol Avenue as testified by Mr. Tish. The brief also states the reason for the sale not being had at the advertised place. It is said that 1821 was closed. This fact is not shown by plaintiff's evidence, but is consistent with testimony given by a witness for defendants. Defendants, who by seeing the published notice had been informed of the time and place of sale, were employed

and at the time of sale required to be on duty. The wife requested Miss Hoffman, a fellow employee, whose morning shift ended at 10 o'clock, to attend the sale and "see what happened." Miss Hoffman testified that she tried to comply with the request by going to 1821 Capitol Avenue three times between ten and ten-thirty the first time not later than three minutes past ten; that no one was there and the place was closed.

Evidence on behalf of defendants show that the radio at the time of its sale by plaintiff was in good condition and of the value of at least $150. The plaintiff introduced no evidence on this subject. Mr. Worland casually volunteered the statement that Mr. Tish's bid "was quite a lot for a radio," but the witness was not being questioned on that subject, and was not pretending to have any information that qualified him to testify as to the value of the property.

We have no statutes prescribing the procedure to be followed in enforcing the rights of a seller under a conditional sale contract. It is conceded that the plaintiff, as assignee of the seller, had the right to treat the property as security for the unpaid part of the purchase price. When it did this, and took possession of the property for the purpose of resale and recovery of the deficiency, it was treating the contract as in its essence a chattel mortgage (Williston on Sales, § 330), and its duties in making the resale were like those of a chattel mortgagee foreclosing under a power of sale. The conditional seller makes the resale on account of the conditional buyer who has the right to have the value of the property credited on the debt. See, Finance Corporation v. Smith, 42 Wyo. 380, 391, 395; 295 Pac. 273; 73 A. L. R. 851. The resale is for the purpose of ascertaining this value, and if the resale is fair and regular it will be presumed, perhaps conclusively, that the selling price is the actual value. See, Denny v. Van Dusen, 27 Kan. 437; Cobbey on Chat. Mtg., § 941.

But if the resale is unfair or irregular and for an inadequate price, the conditional buyer is entitled to have the actual value of the property credited on the debt. Harrison v. Hall, 239 N. Y. 51, 145 N. E. 737; O. S. Kelly Co. v. McCarty, 75 Kan. 818, 88 Pac. 882; Mott v. Havana Nat'l. Bank, 22 Hun. 354, (N. Y.) 357.

There is nothing in the case to cause a court to make it an exception by refusing to apply the above well-settled principles. Defendants undertook to buy a radio having a cash selling price of $166. They have lost the radio after using it for less than two and a half months, and if required to pay the judgment, will be out $230.

When the plaintiff undertook to resell the property by public sale pursuant to notice, there can be no doubt that the sale should have been held at the advertised storeroom which was on a business street and of easy access to the public. There was nothing to show that the basement, where the sale was held, could be seen or entered from the street. Apparently at the time of sale the means of entry was through the adjoining storeroom, occupied by Mr. Worland. For all practical purposes the basement was as remote from the storeroom as a place in some other part of the city. It is argued that the notice of sale was substantially complied with by waiting for bidders at the door of 1821 until after ten o'clock. No authorities are cited. We cannot suppose that a public sale is intended to attract only those persons who appear at the first minute of the advertised hour. The sale is intended to be public until it is completed. In this case, it is likely that the witness Hoffman, seeking to attend the sale at the request of defendants, who, of course, had a right to be represented, was trying to enter the storeroom at the very time the sale was being held in the basement.

The plaintiff's failure to comply with the notice cannot be excused on the ground that the resale might

have been made privately and without notice. J. I. Case Threshing Mach. Co. v. Corpen Bros., 32 Cal. App. 194, 162 Pac. 647; Aultman-Taylor Mach. Co. v. Forrest, 69 Colo. 53, 168 Pac. 1119; 23 Colo. App. 558, 130 Pac. 1086. We do not understand that plaintiff claims that the sale to Mr. Tish should be upheld as a private sale. See Finance Corporation v. Smith, supra.

Even if the resale had been held at the storeroom mentioned in the notice, it may be doubted that the bid of Mr. Tish could fix the value of the property. He was evidently present at the sale, not as a bidder desiring to buy the radio, but as the agent of plaintiff active in looking for bidders. As the agent of plaintiff in the matter of the sale it was his duty to see that the property sold for the highest price that could be obtained. When he became a bidder, it was to his interest to have the property sold for a low price. It would seem that the bid of a person so situated should at least be subject to investigation, and not presumed to represent the real value of the property. See, Perry on Trusts (7th ed.), § 602v; Gibson v. Barbour, 100 N. C. 192, 6 S. E. 766; Martinson v. Clowes, 21 Ch. Div. 857.

The evidence without conflict shows that the sale was for an inadequate price. The lowest estimate of the value of the property at the time of sale was $150. Besides, it cannot be thought that plaintiff, having the right to dispose of the property at private or public sale with or without notice, would incur expenses amounting to more than $34 in order to make a public sale of property worth $35. The fact that the property was resold for an inadequate price might not in itself be sufficient to open the question of value, but it may nevertheless be cogent or even conclusive in determining whether irregularities should be held to have been immaterial. See, 28 Am. & Eng. Enc. Law, 813; Chilton v. Brooks, 69 Md. 584, 587, 16 A. 273.

We think it clear from undisputed evidence that the resale of the property by plaintiff was at least irregular, and that for the purpose of fixing the value of the property it was ineffectual. There might be reasons for holding that in the circumstances the plaintiff has lost his right to recover any deficiency, but that point need not be decided. The defendants claimed only that they were entitled to have the real value of the property credited on the purchase price. We hold that they have that right. It follows, of course, that defendants cannot be charged with the expenses of the irregular sale.

The contract which is on a printed form provides, near its beginning, that the buyer shall pay the instalments of the purchase price "together with any collection expenses." The defendants contend that such "collection expenses"should not include an attorney's fee for prosecuting an action for a deficiency which, according to a provision near the end of the contract, the buyer "agrees to pay" and for which he "does hereby confess judgment," with nothing said at this point about expenses. There may be merit in the contention. The term expenses sometimes is held not to include attorney's fees. See note, Ann. Cas. 1914C, 1300. The deficiency the buyers promised to pay was an amount for which it was assumed they could then confess judgment. It may be doubted that the parties intended that an amount for which judgment was confessed should include the uncertain item of attorney's fees. We may, however, for the purpose of the case assume that "collection expenses" might include a reasonable and necessary attorney's fee incurred by the assignee of the seller in collecting the remainder of the purchase price after a resale of the property as authorized by the contract. But attorney's fees, though agreed to be paid, are subject to the control of the court, and may be disallowed altogether under circum-

stances rendering their recovery inequitable. Graves v. Burch, 26 Wyo. 192, 201, 181 Pac. 354, 5 A. L. R. 1216. This suit for a deficiency might have been unnecessary, if the defendants had received credit for the value of the property. According to the contract the deficiency did not become due until there had been an authorized resale of the property. Defendants knew, on the report of Miss Hoffman, that the resale as advertised had not been held, and it is not shown that they had notice of any claimed sale until this action was commenced. They had no opportunity to prevent a suit by tendering the amount actually due. In these circumstances we think no attorney's fee can be allowed for the prosecution of the action for a deficiency claimed after the irregular resale which, for the purpose of fixing the value of the property, was abortive. See Graves v. Burch, supra; D. A. Tompkins Co. v. Monticello Cotton Oil Co., (C. C.) 137 Fed. 625, 631; Pollard v. American Freehold Land Co., 103 Ala. 289, 300, 16 So. 801, 805; Wright v. Market Bank, (Tenn.) 60 S. W. 623, 629; Fowler v. Equitable Trust Co., 141 U. S. 384, 407; Sage v. Riggs, 12 Mich. 313.

The judgment will be reversed and the case remanded with instructions to enter a judgment consistent with the above views and supported by the undisputed evidence. The deficiency due plaintiff will be ascertained by deducting $150, the lowest estimate of the value of the property at the time of resale, from the amount due plaintiff under the contract at that time.

*Reversed and remanded with directions.*

BLUME and RINER, JJ., concur.